HOUSTON & TEXAS CENTRAL RAILROAD COMPANY ET AL. v.
S. H. BUCHANAN.

Decided February 1, 1905.

**1.—Railway—Demand for Cars—Penalty.**

Whether a railroad company was bound on demand to furnish cars for transportation of cattle to a point beyond a line of its road or not, where it did furnish the cars on such demand but was guilty merely of delay, it is liable to the penalty therefor.

**2.—Railway—Route—Written Contract.**

Whether a shipper, who had demanded of a railway company cars for his shipment routed over certain lines, was bound by a written contract which he was required to sign, and did sign under protest, at the time of shipment, routing same by other connections and over a longer transit, held under the evidence considered in this case to be a question of fact for the jury.

**3.—Opinion—Evidence—Time of Transportation.**

A qualified witness may express his opinion as to the usual time consumed by cattle trains in making the run between points stated in the evidence.

**4.—Reasonable Time—Question of Fact.**

The court may properly define to the jury what it meant by reasonable time, the question being one of fact for their determination under proper instructions.

**5.—Negligence.**

The test of negligence is what a person of ordinary prudence would or would not do under the same or similar circumstances.

**6.—Charge—Satisfy.**

A charge requiring a defendant to satisfy the jury by his evidence was too strong.

**7.—Charge—Measure of Damages.**

The failure of the court to give the jury any rule by which to measure the damages, is more than a mere omission and constitutes reversible error.

**8.—Contract—Connecting Carriers—Damages.**

It was proper to so charge as to subject each of several connecting carriers to damages for the fault of the initial carrier in improper routing of the shipment, but not necessarily ground for reversal where the verdict appears to have allowed such damages only against the intitial carrier.

Appeal from the District Court of Llano County. Tried below before Hon. Clarence Martin.

*S. R. Fisher, J. H. Tallichet* and *Baker, Botts, Parker & Garwood,* for appellants.—The court erred in overruling the special exception because articles 4497 to 4500 of the Revised Statutes of Texas, if construed to apply to interstate shipments, are in violation of and contrary to the Constitution of the United States, because they constitute an attempted regulation of interstate commerce. Gulf, C. & S. F. Ry. Co. v. Crossman, 11 Texas Civ. App., 623, 33 S. W. Rep., 290; Texas & P. Ry. Co. v. Avery, 33 S. W. Rep., 704; Houston Direct Nav. Co. v. Insurance Co., 89 Texas, 1, 32 S. W. Rep., 889; Missouri Pac. Ry. Co. v. Sherwood, 84 Texas, 134.

Insofar as articles 4497 to 4500, inclusive, of the Revised Statutes of Texas require or are construed as requiring railroad companies in the State of Texas to furnish cars for use in making through shipments from the State of Texas into or through other States or Territories of the United States, the same are unconstitutional and void. United States Statutes at Large, vol. 27, 52d Congress, chap. 196, p. 531.

Plaintiff's demand being for cars to be used for the purpose of shipping his cattle from Llano, Texas, to Fairfax, Oklahoma, and the line of defendant's railroad, as appears from the petition and as the court judicially knows, not extending beyond the State of Texas, said demand for cars was not in conformity or compliance with the terms of articles 4497 to 4500, inclusive, of the Revised Statutes of Texas, said statutes not requiring railroad companies to furnish cars to be used beyond their own line of railroad, and on and over the lines of other railroads,

and beyond the limits of the State of Texas.   Rev. Stats. Texas, arts. 4497 to 4500; Houston E. & W. T. Ry. Co. v. Campbell, 91 Texas, 551; McCarty v. Railway Co., 79 Texas, 38; Schloss v. Railway Co., 85 Texas, 601; Bonner v. Association, 4 Texas Civ. App., 166, 23 S. W. Rep., 317; Gulf, C. & S. F. Ry. Co. v. Gray, 87 Texas, 315, 28 S. W. Rep., 280; Gulf, C. & S. F. Ry. Co. v. Baird, 75 Texas, 264; Austin & N. W. Ry. Co. v. Slator, 7 Texas Civ. App., 346, 26 S. W. Rep., 233.

A railroad company can not be required to contract for the transportation of freight beyond its own line of railroad, and a fortiori, it can not be compelled to furnish cars to be used beyond its own line in making such a shipment, nor can a penalty be recovered for its failure or refusal to furnish its cars for such purpose.   Gulf, C. & S. F. Ry. Co. v. Baird, 75 Texas, 264.

Plaintiff alleged that at the time when he shipped the cattle involved in this suit he demanded that they be routed by way of Lampasas, which defendant refused to do; that he then demanded that they be routed by way of McNeil and Milano, which was also refused, and that he thereupon entered into a contract in writing with defendant for the transportation of said cattle by way of Brenham.   To that portion of said petition which alleged the demand for the Lampasas and McNeil routings defendant demurred on the ground that plaintiff was bound by his written contract, which demurrer was overruled.   The court erred in overruling said exception because plaintiff was bound by his written contract and because antecedent negotiations could not operate to vary the same.   Wells, Fargo & Co.'s Express v. Fuller, 4 Texas Civ. App., 223, 23 S. W. Rep., 412.

The court erred in its charge on the law of the case in wholly failing and refusing to charge the jury on the measure of plaintiff's damages, if any they found in his favor, the court nowhere in anywise instructing the jury in what manner they were to determine what, if any, damages should be awarded plaintiff and in no way safeguarding the defendants' right to have only proper and allowable damages awarded against them.

In order to render admissible plaintiff's evidence as to what was the usual and ordinary time consumed by cattle trains in making the run between certain points, it is necessary that the witnesses be qualified to testify as to said matters; the court therefore erred in refusing to strike out the testimony set forth in said bill of exceptions because said witnesses were not qualified to give said testimony.   Gulf, C. & S. F. Ry. Co. v. Irvine, 73 S. W. Rep., 540.

The court erred in said paragraph of its charge on the law of the case in attempting to define the term "reasonable time," because what is a reasonable time is a question of fact and not of law; under the law and under the contracts in evidence in this case there was no absolute duty resting on defendants to carry and deliver plaintiff's cattle within a reasonable time, but the duty was to exercise due diligence in said particulars.

The court erred in its attempted definition of negligence, because negligence is not "an omission to do something which a reasonable man . . . would do," the true test being what a "reasonably prudent man" would or would not do.   Missouri, K. & T. Ry. Co. v. Hannig,

91 Texas, 350; Houston & T. C. Ry. Co. v. Sgalinski, 19 Texas Civ. App., 107, 46 S. W. Rep., 113.

Said paragraph of the charge submits to the jury, in addition to the issue whether or not plaintiff is entitled to recover for damages sustained by his cattle from the use of the longer, Brenham route, the issues (1) whether or not said cattle, while actually being transported over said route, were unreasonably delayed, and (2) whether or not said cattle, while being actually so transported, were handled with ordinary care. But it appeared from the evidence that whatever, if any, damage was sustained by said cattle was caused (1) by delay at Llano, waiting for cars, and (2) by the length of time necessarily consumed in transporting said cattle by the Brenham route. The court therefore erred in said paragraph of its charge in submitting said issues to the jury because there was no evidence raising said issues. Texas & P. Ry. Co. v. Wisenor, 66 Texas, 675; Houston & T. C. Ry. Co. v. Gilmore, 62 Texas, 391; Galveston, H. & S. A. Ry. Co. v. Faber, 63 Texas, 344; O'Dair v. Missouri, K. & T. Ry. Co., 14 Texas Civ. App., 541, 38 S. W. Rep., 242; Gulf, C. & S. F. Ry. Co. v. Vieno, 7 Texas Civ. App., 350, 26 S. W. Rep., 231; Cook v. Dennis, 61 Texas, 248.

The court erred in said paragraph of its charge to the jury, because the same advises the jury that they must find against the Gulf, Colorado & Santa Fe Railway Company, unless the evidence should satisfy them that the damage to said cattle did in fact result from the negligence of another carrier, because it would be sufficient to clear said defendant from liability if the jury believed from the preponderance of the evidence merely that said damage was caused by the negligence of such other carrier, and not of said defendant. Galveston, H. & S. A. Ry. Co. v. Matula, 79 Texas, 577; Willis v. Chowning, 90 Texas, 617; Wallace v. Berry, 83 Texas, 332, 18 S. W. Rep., 595; Baines v. Ullman, 71 Texas, 534, 9 S. W. Rep., 543; Prather v. Wilkins, 68 Texas, 189, 4 S. W. Rep., 252.

It appeared from the uncontroverted evidence that the Gulf, Colorado & Santa Fe Railway Company had naught to do with the cattle involved herein prior to their arrival at Brenham and delivery to said defendant, and it further appeared from the evidence that said defendant was guilty of no negligence causing damage to said cattle while they were in its hands, from said Brenham to Purcell, Indian Territory. The verdict of the jury against said defendant is therefore grossly excessive, plaintiff being without right to recover anything against it.

*McLean & Spears,* for appellee.—Articles 4497 to 4500, inclusive, merely prescribe safeguards and precautions foreseen and proper to prevent by anticipation the wrongs and injuries incident to the failure or refusal of the initial carrier to furnish cars upon seasonable application made, which after they have been inflicted, the State has power to redress and punish, and are strictly within the scope of the local law; and so long as Congress had not legislated upon the particular subject, to be regarded as in aid of interstate commerce and a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits. Houston & T. C. R. R. Co. v. Mayes, 11 Texas Ct. Rep., 69, 372; Armstrong v. Railway Co.,

92 Texas, 121; Texas & P. Ry. Co. v. Walker, 25 Texas Civ. App., 216, 60 S. W., 797; Gulf, C. & S. F. Ry. Co. v. Dwyer, 75 Texas, 581; Chicago, M. & St. P. Ry. Co. v. Solan, 169 U. S., 133; Richmond & A. Ry. Co. v. R. A. Patterson Tobacco Co., 169 U. S., 311; Missouri, K. & T. Ry. Co. v. McCann, 174 U. S., 580; Western U. T. Co. v. Conn. Publishing Co., 181 U. S., 92.

The character of interstate commerce can not attach to railroad cars until they are loaded within the State with property to be shipped by a continuous trip to a point beyond the limit of the State, and articles 4497 to 4500, Revised Statutes, providing a penalty for failure to furnish cars, whether the proposed shipment be intrastate or interstate, are in no sense an attempt to regulate interstate commerce. Houston Direct Nav. Co. v. Ins. Co. of N. A., 89 Texas, 6, 17 Am. & Eng. Enc. (2d ed.), 64-70.

Whether plaintiff's demand for cars was verbal or written, and without regard to whether the point of destination was upon or beyond the terminus of the railroad of the defendant, Houston & Texas Central Railroad Company, when made in due time to its local agent at Llano, it became said defendant's duty, as a common carrier, independent of statutory obligation, to furnish at the time and place named, suitable cars in which to ship plaintiff's cattle, and the statute referred to in appellant's propositions under said assignment, placed no restrictions upon defendant in the exercise of its right to limit the use of its cars to its own line. McCarn v. International & G. N. Ry. Co., 84 Texas, 358; Gulf, C. & S. F. Ry. Co. v. Baird, 75 Texas, 264; Easton v. Dudley, 78 Texas, 238; Hunt v. Nutt, 27 S. W., 1031; Myrick v. Railway Co., 107 U. S., 106; Newport News & M. V. R. R. Co. v. Mercer, 29 S. W., 302; Pittsburg, C. & St. L. Ry. Co. v. Morton, 61 Ind., 539; Chicago, St. L. & P. Ry. Co. v. Wolcott, 141 Ind., 267, 5 Am. & Eng. Enc. (2d ed.), 175, 430, 6 id., 372.

The plaintiff's allegations to the effect that said written contract was executed under circumstances of duress and without consideration, were sufficient to support the court's ruling on defendant's third special exception. Missouri, K. & T. Ry. Co. v. Carter, 9 Texas Civ. App., 698; San Antonio & A. P. Ry. Co. v. Wright, 20 Texas Civ. App., 137, 49 S. W. Rep., 148; Missouri, K. & T. Ry. Co. v. Darlington, 40 S. W. Rep., 550; Missouri, K. & T. Ry. Co. v. Withers, 16 Texas Civ. App., 511, 40 S. W. Rep., 1073.

The evidence was sufficient to raise the issue as to whether or not the plaintiff requested, and the defendant agreed to ship plaintiff's cattle by way of Lampasas, and the court properly charged upon the effect of defendant selecting a longer and more circuitous route. Wells, Fargo & Co.'s Express v. Fuller, 4 Texas Civ. App., 213; Gulf, C. & S. F. Ry. Co. v. Irvine, 73 S. W. Rep., 540.

If the court's charge be erroneous by reason of an omission, defendants can not take advantage thereof unless they asked a special instruction calling the court's attention to such omission. Robinson v. Varnell, 16 Texas, 387; International & G. N. Ry. Co. v. Leak, 64 Texas, 659; Burnham v. Logan, 88 Texas, 4.

The court is not required to charge all the law in a case. Art. 1316, Rev. Stats., as amended by chap. 29, Acts of the 28th Leg.; Gal-

veston, etc., Ry. Co. v. Botts, 22 Texas Civ. App., 609; Breneman v. Mayer, 24 Texas Civ. App., 178.

While "reasonable time" is question of fact, the court may define it without invading the province of the jury. Boehringer v. A. B. Richards Med. Co., 9 Texas Civ. App., 289; Missouri K. & T. Ry. Co. v. Chittim, 24 Texas Civ. App., 602, 60 S. W. Rep., 285; Black's Law Dictionary.

When a written contract for the shipment of cattle is silent as to the time of delivery at the place of destination, delivery must be made within a reasonable time. Ft. Worth & D. Ry. Co. v. Greathouse, 82 Texas, 111; Gulf, C. & S. F. Ry. Co. v. Baugh, 42 S. W. Rep., 246.

There was no reversible error in the third paragraph of the court's charge in defining negligence as follows: "Negligence is an omission to do something which a reasonable man, guided by those considerations ordinarily regulating the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do, and must be determined in all cases by reference to the situation and knowledge of the parties and the attending circumstances." Parrott v. Wells, Fargo & Co., 15 Wall. (U. S.), 538; Black's Law Dictionary.

"Each defendant is only liable for negligent and unreasonable delays and want of ordinary care occurring on its own line of railroad, and not for any delays or want of care of other defendants occurring on their line of railway, and you are further instructed that if you find for the plaintiff, you will not, in assessing the damages so found by you, if any, assess any damage against either defendant resulting from delays, if any, or want of ordinary care, if any, occurring beyond the terminus of its own line" is a correct presentation of law. Gulf, C. & S. F. Ry. Co. v. Cushney, 95 Texas, 309, 67 S. W. Rep., 78.

FISHER, Chief Justice.—This is a suit by Buchanan against the Houston & Texas Central Railroad Company for penalty in the sum of $175, for failure of that road to furnish cars on demand made by the plaintiff; and also for damages for delay; and against the Gulf, Colorado & Santa Fe Railway Co., and the Atchison, Topeka & Santa Fe Railway Company for damages for delay in the shipment of cattle over the roads named. Verdict and judgment was for plaintiff against the Houston & Texas Central for $175, by way of penalty, and for $697.65 damages, and against the Gulf, Colorado & Santa Fe Railway Company for $261.60 damages, and in favor of the Atchison, Topeka & Santa Fe Railway Company.

The first, second, third, fourth, fifth, sixth and seventh assignments of error are practically the same as those considered by this court in the case of Houston & Texas Central Railroad Company v. Everett (11 Ct. Rep., 862), where we ruled against the contention of appellants on the questions raised by these assignments. But, however, in addition to what is said in the opinion in that case, some of these assignments raise a question which we will briefly notice. The Everett case is based upon Houston & T. C. Ry. Co. v. Mayes (11 Texas Ct. Rep., 69), decided by this court, and in which the Supreme Court has refused a writ of error. It was there held that the statute relating to a demand for cars,

and prescribing a penalty for failure and refusal to comply with the demand, applied to interstate shipments. In this case, however, the question is raised that the Houston & Texas Central Railroad Company, against whom the judgment for penalty was rendered, was not required to furnish cars to be used beyond its own line by connecting carriers. In consultation in the Everett case, we considered this question. The demand for cars, as shown in the record in this case, as well as in the Everett case, does not expressly state that the cars should be used beyond the end of the Houston & Texas Central Railroad. It reads that "for the purpose of making a shipment of cattle from Llano, Texas, to Fairfax, Oklahoma Territory, I desire seven cars at Llano on the 14th day of April, 1903. I herewith tender you one-fourth of the freight charges for the use of the cars." The expression, "for the use of the cars," mentioned in the statute, evidently refers to the freight rate between the two points for transporting the cattle. In compliance with this request, the Houston & Texas Central road did furnish the cars, but was guilty merely of delay, which subjected it to the amount of penalty recovered by the plaintiff. If we could concede that this railway company was not bound to furnish cars in transporting commodities to market beyond the line of its road, there was no purpose in this case in furnishing the cars to assert this right. The railway company did furnish cars under circumstances which indicate that it intended that the cars should be used in transporting the cattle to Fairfax, Oklahoma. There is a reservation, it is true, in the contract of shipment, that each carrier would not be responsible for damages resulting beyond its own line, and, in submitting the case to the jury, the court kept in view this question, and the verdict of the jury does not hold either road responsible for damages occurring on other lines of road. If the Houston & Texas Central road would be entitled to the privilege of limiting the use of its cars to its own line, this right was not asserted nor claimed when the contract of shipment was entered into, or when it undertook to furnish the cars in compliance with the request made by the plaintiff. Therefore, in view of the facts in the record bearing upon this question, we deem it unnecessary to decide the question whether the railway company would be bound under the statute requiring it to furnish cars at the written request of the shipper, to be used in transportation beyond the line of its road.

The eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth assignments of error will be considered together. These assignments substantially raise the question that as the written contract of shipment signed by the plaintiff routes the cattle over the Houston & Texas Central Railway by way of Brenham, to the connecting line, the Gulf, Colorado & Santa Fe Railway, that he can not be heard to urge the claim of damages for wrongfully routing the cattle by way of Brenham, and for the consequent delay and damages resulting to the cattle, by reason of the longer route and haul by Brenham. The appellant contends that entering into the written contract routing the cattle by Brenham, concludes the plaintiff from recovering any damages for delay that the cattle might have sustained by reason of being so routed. There is evidence in the record to the effect that when the plain-

tiff entered into negotiations for the shipment of the cattle and demanded the cars, he paid the freight rate upon the basis of $63.25 per car, which amount he understood to be the usual amount; and the evidence does not indicate that he had any notice or knowledge that a greater amount would be charged if the cattle were routed by way of Lampasas, which the evidence shows to be a much shorter haul than if transported by way of Brenham. The plaintiff demanded that they be shipped by way of Lampasas, and supposed at the time that they would be so shipped, and was not otherwise informed, until after the cattle had been delivered to the railway company and placed on board of the cars. Then he was required to sign a contract, practically over his protest, for the shipment of the cattle by way of Brenham; which, as stated before, is a much longer haul, and by reason of which the cattle arrived at their place of destination much later than would have been the case if they had been routed by way of Lampasas or McNeil. Plaintiff's case is, in part, predicated against the Houston & Texas Central upon the wrongful routing by way of Brenham, and for the longer time in transportation that resulted by reason of that fact; and also for some delays that occurred at Llano, and possibly some other points between Llano and Brenham. Upon this subject, the station agent at Llano testified:

"I didn't advise Mr. Buchanan to take the route by way of Lampasas, but it was understood by him and me at the time he placed the demand that he wished to go that way. After the cattle were loaded he said he wanted the through rate, $63.25, by this way. The tariff in force did not apply this rate by Lampasas. In February there was one shipment billed by way of Lampasas, had certain advices. I think it was $16 a car to Lampasas; that was as far as our billing showed, except the destination, which was White Eagle, I believe. The contract was made with the general freight agent. This was the last shipment billed by way of Lampasas from that time up to the 15th of April of last year This one was made about the 18th day of April, 1903, rate $63.25. The same as the rate before by way of Brenham. This rate was in force when Mr. Buchanan made his shipment for the other routes—not by way of Lampasas, only by way of Ft. Worth and Brenham. It is true that when Mr. Buchanan and Mr. Everett went over and told me they wanted the cars, they also told me that they wanted to ship by way of Lampasas before they ever made the written demand. They then asked me the rate, and Mr. Buchanan tendered me one-fourth the freight rate for seven cars, which I accepted. I told them I thought we could make arrangements for them that they could go by way of Lampasas, and knowing that they wanted to go this way, I made the rate of $63.25 a car. It was the only rate I had there to give them, either then or now. Within a certain territory I have a given rate, no matter whether they went by Lampasas, McNeil or Brenham. There was nothing said about billing the cattle through at all; they were merely contending for the rates they understood applied, $63.25 a car, and after those cattle were tendered here ready and loaded, I told them I couldn't take them by way of Lampasas, but offered to send them by way of Lampasas, if they would accept my local billing to Lampasas. I don't remember whether they asked for billing by McNeil. Twenty-three or four cars of cattle were shipped prior to this date, April 15, 1903, by Morledge at a through

rate of $63.25. I have had numerous demands prior to this date for routing by way of Lampasas down from Llano to Indian Territory. To the plaintiff in this case I gave the reason our road wouldn't ship by way of Lampasas was that the haul was so short and the rate so small that they couldn't afford it. I think I told him that, I don't remember exactly. We first began to ship cattle at this rate by Lampasas on the 18th of April, and have been shipping that way ever since. On the 14th, 15th and 8th of April, 1903, there were through connecting railroad lines from Llano by Lampasas to Fairfax, Oklahoma Territory, and also by McNeil and Milano Junction, a shorter route than the one by Brenham. I refused positively to ship for plaintiff by way of Lampasas on the $63.25 rate I had given him before. He merely demanded that the cattle be billed through at this rate by Lampasas. I could only take him by way of Brenham or Ft. Worth. That rate did not apply through by McNeil at that time. I could have shipped that way only on the sum of local rates. The through rate had not been applied for about three years. They were billed out at a rate of $16 a car to Lampasas, to the best of my recollection."

There is other evidence in the record coming from the plaintiff, to the effect that he intended and expected to go by way of Lampasas under the $63.25 rate, and that he was denied this privilege, and required to sign the written contract by way of Brenham. Under this evidence it was a question of fact for the jury to determine whether the written contract routing the cattle by Brenham was binding upon the plaintiff, or whether plaintiff had the right to insist upon his demand to be routed by Lampasas. It is apparent that under the circumstances under which the written contract was forced upon the plaintiff, that the agent would not have shipped the cattle by any other route except by Brenham, except on the local rate to Lampasas. Questions similar to this have been passed upon in Missouri, K. & T. Ry. Co. v. Carter, 9 Texas Civ. App., 677, 29 S. W. Rep., 565, and Gulf, C. & S. F. Ry. Co. v. Jackson, 11 Ct. Rep., 849.

There is evidence in the record which shows some slight delays in addition to the time resulting from the long haul to Brenham, occurring on the Houston & Texas Central road. There is also evidence of delays on the Gulf, Colorado & Santa Fe Railway.

The sixteenth and seventeenth assignments of error complain of the ruling of ∧the court in overruling special exceptions addressed to the plaintiff's original petition. The pleading complained of, in our opinion, was sufficient.

The evidence complained of under the nineteenth assignment of error was admissible. We are not prepared to say but what these witnesses were qualified to express an opinion as to the usual time consumed by cattle trains in making the run between the points stated in the evidence.

We find no fault with the language of the court in undertaking to define "reasonable time," as complained of in the twentieth assignment of error. As to what is or is not reasonable time, is a question of fact and not of law; but the definition given by the court did not deprive the jury of the right to pass upon the question of fact as to whether the time was reasonable or unreasonable. The court merely undertook to

give a definition of the expression "reasonable time," and we find no fault with the rule that he states.

The question presented under the twenty-first assignment of error was passed upon by this court in the Everett case. We there said that there was no error in the definition of negligence given by the trial court. However, we would suggest that the usual definition generally given by the courts be followed by the trial court, if this case is again tried. The test is what a person of ordinary prudence would or would not do, under the same or similar circumstances.

In disposing of the twenty-second assignment of error, we have said that there is evidence of delay upon the part of the Santa Fe road.

We overrule the twenty-third assignment of error. The charge of the court is not subject to the objections urged against it. No reversible error is shown in the twenty-fourth assignment.

There is no objection to the principle of law stated under the twenty-fifth assignment of error, and we are of the opinion that it was proper to be submitted under the facts of this case. But in the body of the charge the court uses the expression, "and should said terminal carrier satisfy you from the evidence," etc. The use of the word "satisfy" is too strong, and in again submitting this question the court should not use the expression "satisfy." All that is required is a preponderance of the evidence upon this subject.

The charge complained of under the twenty-sixth assignment of error is not on the weight of evidence. The twenty-eighth assignment of error is too general to be considered. But, however, it is unnecessary that we should pass upon the question there raised, as the judgment will be reversed on other points.

The eighteenth assignment of error is well taken. The charge of the trial court does not submit to the jury any rule as to the measure of damages. As to whether damages have been sustained is a question of fact for the jury. The rule to measure these damages is one of law, and it is impossible to conceive how a jury can correctly apply the rule of law in measuring the damages, unless the court instructs them as to the rule in its charge.

The failure to do this is more than a mere omission, and we regard it as positive error, in submitting a case of this kind, for the charge to fail to inform the jury as to the rule of law that should govern them in determining from the facts the amount the plaintiff might be entitled to recover.

We are also inclined to the opinion that the twenty-seventh assignment of error is well taken. The charge there complained of substantially instructs the jury that all the defendants or either of them could be held responsible for the damages resulting from wrongfully routing the cattle by way of Brenham. If the cattle were wrongfully routed, only the Houston & Texas Central Railroad Company was responsible for that fact. Neither the Gulf, Colorado & Santa Fe, nor the Atchison, Topeka & Santa Fe were parties to the contract of routing the cattle, and it was error for the court to instruct the jury that they could be held responsible for any damages resulting from that fact. We do not mean to say that we would make this reversible error, if there had been no other error shown that would require us to reverse and remand the

case. But the charge is misleading upon this question, and ought not to have been given, although it is apparent from the verdict of the jury that they did not allow any damages against either of the Santa Fe roads for wrongfully routing the cattle by way of Brenham.

For the errors stated, the judgment is reversed and the cause remanded, except as to the Atchison, Topeka & Santa Fe Ry. Co. the judgment below is affirmed.

*Reversed and remanded.*