**EHLERT et ux. v. GALVESTON, H. & S. A. RY. CO. (No. 8643.)**

(Court of Civil Appeals of Texas. Galveston. May 19, 1925. Rehearing Denied June 18, 1925.)

**1. Limitation of actions ⬅⟹55(1)—Action for damages for impairment of health for maintenance of permanent nuisance held barred by statute of limitations.**

A cause of action for the permanent impairment of plaintiffs' health arose at the time of such impairment, and an action commenced six years thereafter was barred by the statute of limitations.

**2. Nuisance ⬅⟹50(1)—Damages for temporary nuisances not recoverable under petition for damages for permanent nuisance.**

In a suit to recover property damages, and damage for impairment of health, caused by overflow of oil tanks and noxious gases, where suit was based upon theory that nuisance was permanent in character, plaintiffs were not entitled to recover damages resulting from temporary nuisance.

**3. Limitation of actions ⬅⟹55(7)—Action for property damages held barred by statute of limitations.**

Plaintiffs' suit, filed in 1922, for property damages caused by oil overflowing from defendant's tanks since 1916, held barred by two-year statute of limitations.

**4. Limitation of actions ⬅⟹55(6)—Cause of action for damages for permanent nuisance arose when nuisance is created and plaintiffs' rights invaded.**

When damages are claimed as a result of a permanent and continuing nuisance, the cause of action therefor must be held to have arisen when the nuisance was created and plaintiffs' rights invaded thereby.

**5. Nuisance ⬅⟹53—Evidence as to value of trees destroyed, insufficient for jury.**

In an action for property damage from maintenance of alleged nuisance, where only evidence as to value of shade trees alleged to have been destroyed was plaintiffs' statement as to amount expended upon trees, there was not sufficient evidence as to value to go to jury.

**6. Damages ⬅⟹9—Plaintiff failing to show actual damage through invasion of legal right may recover nominal damages.**

When plaintiff fails in his action to show actual damage for the invasion of his legal right, he may yet be entitled to recover nominal damages and cost of suit.

**7. Nuisance ⬅⟹50(1)—Nominal damages for temporary nuisance not recoverable under petition alleging permanent nuisance.**

Neither nominal damages nor permanent damages are recoverable by plaintiffs for discomfort and annoyance in the enjoyment of their home, resulting from a temporary nuisance, where petition alleged permanent nuisance.

**8. Nuisance ⬅⟹33—Injunction sustained by evidence.**

In a suit to restrain a nuisance, plaintiffs' right to an injunction is not a question for jury, but one which rests in sound discretion of trial court, and trial court's refusal to grant a mandatory injunction was not erroneous in view of evidence.

**9. Nuisance ⬅⟹57—Removal of nuisance cannot be demanded in suit for damages.**

Where plaintiffs sued for damages for the construction and maintenance of a permanent nuisance, they cannot in such suit also demand the removal of such nuisance, but should have elected to sue either for damages or for removal of nuisance.

**10. Nuisance ⬅⟹35—Injunction to restrain future negligent act properly refused.**

In an action to restrain a nuisance, court did not abuse its discretion in refusing an injunction to restrain defendant preventing future overflow of oil tanks, it not being practicable to use writ of injunction to prevent future negligent acts.

Appeal from District Court, Matagorda County; M. S. Munson, Judge.

Action by J. A. Ehlert and wife against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

W. S. Holman, of Bay City, and McDonald & Wayman, of Galveston, for appellants.

Baker, Botts, Parker & Garwood, of Houston, Styles, Krause & Erickson, of Bay City, and Proctor, Vandenberge, Crain & Mitchell, of Victoria, for appellee.

PLEASANTS, C. J. This suit was brought by appellants against appellee to abate an alleged nuisance, and to recover damages for its maintenance by appellee.

The following sufficient summary of the pleadings is copied from appellants' brief:

"Appellants filed suit against appellee on May 29, 1922, alleging in substance, that they were then, and had been for many years, owners of certain realty in Bay City, with a home thereon, immediately adjacent to appellee railway company's property, on which it maintained and operated an elevated oil tank in which to store crude oil, a buried oil tank, or sump hole, for the storage of crude oil, a large tank in which to store water, a building for the storage of coal oil, gasoline, and other combustible oils, and a house containing a gasoline engine and pumping outfit. It is alleged that appellee maintained and operated such facilities so as to constantly cause the oil from the tank and the sump hole to flow on appellants' property, the approaches thereto and the drainage ditches around; that the water tank was permitted to constantly overflow on their premises and sidewalks; and that the gasoline engine was operated at unreasonable hours, and made an unseemly noise. It is averred that the oil caused the homestead to be filled with noxious and

disagreeable odors and smells; that unseemly noises have been made by the gasoline engine day and night; and that danger of fire was greatly increased by the presence of oil around appellants' property. There are frequent allegations that the operation of the facilities was negligent and wanton, and that the comfort and enjoyment of the home was greatly impaired.

"It was averred that the value of appellants' property was diminished and damaged to the extent of $5,000, and that shade trees, grass, and fences were destroyed to the value of $500; It was alleged, in substance, that the smells and odors, the noise from the engine, and the presence of the escaped oil had prevented Mrs. Ehlert from sleeping for the past several years, and caused her to become nervous and ill, for which impairment of health $10,000 damages were claimed.

"After alleging that appellee had promised, in consideration of appellants' not suing, to operate its property so as not to cause appellants any damage, and that the promises were violated, the court was asked to restrain appellee from operating said crude oil tank, sump hole, and water tank in such manner as to flood the adjoining premises and the premises of plaintiff, and from operating and maintaining said gasoline tank, gasoline pumping plant, and gasoline storage room in such manner as to increase the danger of fire to plaintiffs' property, and in such manner as to saturate plaintiffs' property and adjoining property with water and gasoline. A mandatory injunction was also prayed for, requiring the removal of the facilities in question.

"Appellee filed a general demurrer and eight special exceptions, all of which were overruled. Appellee then specifically traversed practically all, if not all, of the material allegations in the petition, following which there were special allegations to the effect that, because the structures were instrumentalities of interstate commerce, the district court was without power either to abate or to regulate their use. After alleging a grant in 1903 from the Legislature and the commissioners' court of Matagorda county to locate and maintain its tracks as they are located, it is averred that the structures are necessary and are properly maintained and operated. The manner of use of the facilities is specifically described. It is alleged that the facilities are arranged for economic and convenient use, and are in keeping with a plan that was made when the tracks and station were laid out in 1903 by appellee's predecessor in title. The prayer for injunction is resisted because the plant does not constitute a nuisance, appellants have an adequate remedy at law, and because it would be inequitable to abate, considering the alleged value of the properties compared to the damage, if any, sustained by appellants, and because an injunction was not sought in a reasonable time, considering that the water tank and engine and pump have been in operation since 1903 and the oil tank and sump for eight or ten or more years before the suit was filed. The 2-year statute of limitations was pleaded to each cause of action."

The case was tried with a jury, and under peremptory instructions of the trial court a verdict was returned in favor of de-

fendant, upon which judgment was thereafter rendered for defendant.

The evidence shows that appellee or its predecessor in title, under proper authority, built its line of railway in Ninth street in Bay City in 1903 when the tracks were laid down and the depots erected. In that year it erected a 50,000 gallon water tank on lot 11 in block 66 and a pump-house with an engine therein to pump water into the water tank. As shown by a blue-print, the water was piped to a crane on the right of way to supply engines. The water tank was rebuilt about 1920 and the pumphouse added to in 1916; otherwise they have been maintained and operated as originally constructed to the date of trial. The upground crude oil tank and the oil sump were placed on the property in 1916.

Appellants acquired their home place (lot 7, block 66) in 1909, and the remainder of their property in block 66 between that date and 1912 or 1913. Some of the property in block 75 was acquired as late as 1918.

After the erection of the crude oil tank and the sump, additional pumping facilities were added to the pumphouse to pump this crude oil in addition to the water. The oil was run from railway cars into the sump, then pumped to the oil tank, from which it was piped to the oil column, or crane, on the right of way, to supply fuel oil to engines. Appellant Ehlert complained to the agent of appellee after these additions were made to the facilities, because the oil tank had been permitted to overflow and flush the sidewalks and get onto his property. Appellant tried to remedy the situation in part by building a special sidewalk.

Appellant put out shade trees which were killed by the oil in the ditch. He expended about $100 trying to get these trees to grow. The smells and odors from the oil have been coming into appellants' property since 1916 or 1917. They made Mrs. Ehlert ill and nervous, and have necessitated her going away from time to time. The maintenance and operation of the facilities in question materially affected the value of appellants' realty. The gas engine made a great deal of noise.

[1] There was evidence from which the jury might have found that appellee had at various times negligently permitted the oil and water tanks maintained by it to overflow, and that the oil thus released on appellee's premises was carried into ditches and on sidewalks adjacent to appellants' home, that the gasoline engine was operated at unreasonable times with unnecessary noise, and that the obnoxious and disagreeable odors arising from this overflow of oil and the unusual and unnecessary noises of the engine interfered with appellants' comfortable and quiet enjoyment of their home. While most of the negligent operation of these railroad facilities was during

the time the road was being operated by the government, some of it occurred after the government control had ceased, and within less than two years before this suit was filed. Mrs. Ehlert's health became impaired not later than 1916, and if such impairment is permanent any cause of action therefor arose in that year, and was barred by limitation long before this suit was filed.

Upon this state of the pleading and evidence, we think the trial court properly instructed the jury to return a verdict in favor of appellee.

[2] Appellants' suit is to recover damages to their property caused by a permanent nuisance, and damages for the permanent impairment of Mrs. Ehlert's health. The petition cannot be construed otherwise than as asserting a cause of action, based upon the theory that the alleged nuisance was permanent in its character, and that plaintiffs were entitled to recover in this suit all the past and prospective damages to their property caused by the alleged nuisance.

On this pleading appellants were not entitled to recover general damages resulting from a temporary nuisance caused by the negligent operation by appellee of its oil and water facilities. City of Austin v. Bush (Tex. Civ. App.) 260 S. W. 300; Baugh v. Railway Co., 80 Tex. 56, 15 S. W. 587; Brown v. Railway Co., 42 Tex. Civ. App. 392, 94 S. W. 134.

[3] The property damages claimed in the petition are $5,000 decrease in the value of plaintiffs' property, and $500, the alleged value of shade trees, grass, and fence destroyed by oil let loose by appellee, and the only additional damage claimed is $10,000 for the permanent impairment of the health of Mrs. Ehlert. The only evidence of the amount of damage to the property was testimony showing the difference in its value before and after the building of the oil tank in 1916. Appellants' claim for this damage was clearly barred by the 2-year statute of limitation pleaded by appellee.

[4] When damages are claimed as a result of a permanent and continuing nuisance, the cause of action therefor must be held to have arisen when the nuisance was created and plaintiffs' rights thereby invaded. Brown v. Railway Co., 42 Tex. Civ. App. 392, 94 S. W. 134.

[5] There is no evidence as to the value of the shade trees, grass, and fence alleged to have been destroyed. The only testimony offered as to this value was this statement of plaintiff, J. H. Ehlert: "I expended about $100 trying to get those shade trees to grow on my place." It goes without saying that this testimony does not raise the issue of the value of the trees, and there was nothing to go to the jury on this claim of damages.

[6] It is true, as urged in appellants' brief, that when a plaintiff sues for damages for the invasion of a legal right, and fails to show on the trial any actual damage sustained by him, he may yet be entitled to recover nominal damages and cost of suit. Miller v. Moore (Tex. Civ. App.) 111 S. W. 750; Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580; 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914. It is also true that it is not necessary for a petition to set out the proper measure of damages. Wells v. Mason (Tex. Civ. App.) 258 S. W. 914. But these rules of decision do not sustain the proposition that nominal damages can be recovered upon a cause of action not alleged in the petition.

[7] If the evidence shows that plaintiffs in this case are entitled to recover any damages, it is for the discomfort and annoyance in the enjoyment of their home resulting from a temporary nuisance caused by the negligence of appellee, and no damages, actual or nominal, caused by a temporary nuisance are recoverable under their petition.

In Austin v. Bush, supra, the court says:

"Appellee's petition discloses that he brought his suit upon the theory that the nuisance was of a permanent character, and that he was entitled to recover at once and for all time such damages to his premises as had been occasioned by the permanent nuisance alleged."

—and then held that:

"Under this pleading he would not have been entitled to a recovery of such injury as his property had sustained up to that time by reason of a temporary nuisance"—citing Baugh v. Railway Co., 80 Tex. 56, 15 S. W. 587.

[8] The question of appellants' right to an injunction in cases of this character is not one for the jury, but rests in the sound discretion of the court, and we cannot hold that the court erred in refusing such relief in this case. Gose v. Coryell, 59 Tex. Civ. App. 1164, 126 S. W. 1107.

[9] The evidence clearly justified, if it did not compel, a finding by the trial court that the erection and maintenance by the appellee of the water and oil tanks at the place they are located was reasonably necessary in the operation of appellee's railway. Appellants concede in their brief that the evidence was such that it might be "fairly and reasonably concluded that the railway company did not act arbitrarily in erecting and maintaining the elevated tank and sump at the place where located; that there was a reasonable necessity for the location at that particular point; that no other eligible place could be found." Such being the state of the evidence, the ruling of the trial court refusing a mandatory injunction requiring the removal of the tanks must be sustained. In addition to this, as we have before shown, plaintiffs' suit was for the recovery of damages for the construction and maintenance of the tanks which the petition declares created a permanent nuisance, and they seek in this

action to recover the entire damages past and prospective to their property resulting from such alleged nuisance. They cannot in such suit also demand the removal of the alleged nuisance, but should have elected either to sue for damages or for the removal of the nuisance. Kennedy v. Garrard (Tex. Civ. App.) 156 S. W. 570; Hockaday v. Wortham, 22 Tex. Civ. App. 419, 54 S. W. 1096.

[10] It is equally clear that the court did not abuse its discretion in refusing to issue an injunction restraining appellee from permitting its tanks to again overflow. If such overflow should again occur, plaintiff would have their remedy for any damages they may thereby sustain. It is not practicable to use the writ of injunction to prevent a future negligent act. Such use of this remedy in this case would involve the continuous supervision by the court of the operation of these facilities by the appellee, and this use of the writ has never been sanctioned by our courts.

We have found no error in the record which, in our opinion, would authorize reversal of the judgment of the trial court, and it has therefore been affirmed.

Affirmed.