MAGNOLIA PETROLEUM CO. v. AIKEN
et al.    (No. 231.) *

(Court of Civil Appeals of Texas. Eastland.
Oct. 29, 1926. Rehearing Denied
Dec. 23, 1926.)

**1. Appeal and error ⟺365(1)—Decision of Court of Civil Appeals received approval of Supreme Court by refusal of writ of error.**

Decision of Court of Civil Appeals, that gasoline produced from casing-head gas is oil, received approval of Supreme Court by refusal of writ of error.

**2. Mines and minerals ⟺79(1)—"Casing-head gas" is not synonymous with "gasoline."**

"Casing-head gas," from which casing-head gasoline is produced, is not synonymous with "gasoline."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gasoline.]

**3. Mines and minerals ⟺79(1)—Provision for royalty when gas is used or sold off premises held to mean when gas is used for fuel only.**

Where no royalty was provided for casing-head gas, except when used or sold off premises, it applied when such gas was used for fuel only.

**4. Contracts ⟺155—Language is construed most strongly against party using it.**

In interpretation of contracts, language used will be construed most strongly against party using it.

**5. Contracts ⟺154 — Interpretation which makes agreement fair and reasonable will be preferred.**

Interpretation which makes contracts fair and reasonable will be preferred to one which leads to harsh or unreasonable results.

**6. Mines and minerals ⟺79(1)—Royalty for casing-head gas when used off premises held not to relieve defendant from obligation to pay for gasoline extracted from casing-head gas.**

Royalty provision for $25 per year for casing-head gas, when used or sold off premises, held to relate to use of gas for fuel, and not to relieve defendant of obligation to pay for oil produced therefrom, whether brought to surface in liquid or vapor form.

**7. Appeal and error ⟺719(1)—There need be no assignment of fundamental error.**

Where error is fundamental, it need not be assigned to be considered.

**8. Mines and minerals ⟺123—Damages for temporary injury to premises held not recoverable under petition claiming permanent injury.**

Lessor of oil privilege, alleging that damage to land from salt water was permanent, could not recover for injuries temporary in character.

**9. Mines and minerals ⟺125—Omission to submit to jury whether damage inflicted by salt water was permanent held reversible error.**

In lessor's suit for permanent injuries to land from flooding by salt water, where evidence was conflicting as to whether there was damage, instruction as to measure of damages, applicable without submission of issue as to permanency thereof, was reversible error.

**10. Appeal and error ⟺216(3)—Omissions in charges are reviewable under exceptions thereto without requesting special charge.**

Defects in charges for omissions may be reviewed by lodging exceptions thereto without requesting special charge.

---

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 9, 1927.

11. Trial ⬥143—Where there is jury trial, court cannot determine issues on conflicting evidence except by agreement.

Where there is jury trial, all issues requisite to plaintiff's recovery must be submitted; such issues not being determinable by court except by agreement.

12. Mines and minerals ⬥125—Whether oil operator was negligent in permitting salt water on land held under evidence for jury.

Where lessee of oil well permitted salt water from wells to flow over premises, evidence of its conveyance of water from wells in manner contrary to natural drainage of land held for jury on question of negligence.

13. Mines and minerals ⬥125—Charge of proximate cause of injury to land from salt water should have been given.

In suit for damages on account of salt water from wells being permitted to flow over premises, charge of proximate cause of injury to land should have been given, in view of evidence that salt water was produced with oil saved.

14. Mines and minerals ⬥125—Injury from storage of salt water, not caused by defendant's negligence, is damnum absque injuria.

Where lessee of oil well could use lessor's land for storage of salt water, injury necessarily arising from such storage and not caused by defendant's negligence would be damnum absque injuria.

15. Trial ⬥194(15)—Refusal of instruction that lessee's necessary use of pits for storage of salt water would not be negligence held properly refused as on weight of evidence.

In suit for injury to land from storage of salt water thereon, refusal of special charge, stating that if pits were necessary or convenient such use would not constitute negligence, held proper; it being on weight of testimony.

16. Mines and minerals ⬥123 — Recovery could not be predicated on lessee's negligence in locating salt water pit at place designated by lessor.

Where, under oil lease, lessee was given use of premises for storing salt water, no recovery could be predicated on negligence in locating pits at places designated by lessor.

Error from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by E. P. Aiken and others against the Magnolia Petroleum Company. Judgment for plaintiffs, and both parties bring error. Reversed and remanded.

Scarborough & Wilson, of Abilene, and Hickman & Bateman, of Breckenridge, for plaintiffs.

Conner & McRae, of Eastland, for defendant.

PANNILL, C. J. The parties will be designated as in the trial court. E. P. Aiken and others filed suit against the Magnolia Petroleum Company. So far as material now, the plaintiff sought an accounting for gasoline produced from gas from wells drilled on premises of plaintiffs under a lease executed by plaintiffs' predecessors in title and for damages to the land on account of salt water from said wells being permitted to flow over the premises.

On a trial a demurrer was sustained to so much of the petition as sought a recovery for gasoline. The issue of damage to the land from salt water was submitted to a jury, and a special verdict returned assessing plaintiff's damages at $1,500. Both parties have prosecuted writs of error.

The petition alleged that large quantities of gas had been produced from such wells and that said gas contained gasoline in large quantities; that gasoline is refined oil, and that under the terms of the lease plaintiffs are entitled to recover one-eighth thereof; that defendant has taken large quantities of gasoline from said wells, the amount being unknown to plaintiff but peculiarly within the knowledge of defendant, for which defendant refused to account and sought an accounting as stated. The other ground for recovery was for permanent injury to the land.

The royalty provisions copied in the opinion in Connellee v. Magnolia Petroleum Co. (Tex. Civ. App.) 279 S. W. 597, are identical with those in the leases now under consideration, and if the decision there made by this court is correct, the trial court was in error in sustaining the demurrer. That case, among others, is relied on by the plaintiffs. It is ignored, however, by the defendant, probably because a writ of error was granted.

[1] In Livingston Oil Corporation v. Waggoner (Tex. Civ. App.) 273 S. W. 903, the court declared that gasoline produced from casing-head gas is oil and the lessee is entitled to one-eighth thereof under a royalty provision for oil. This decision under the authorities received the approval of the Supreme Court by the refusal of a writ of error. Burrell v. Adams, 104 Tex. 183, 135 S. W. 1156. So until the Supreme Court declares otherwise we feel in duty bound to follow the Livingston Case, supra.

[2, 3] The application of the case just referred to is denied by the defendant on the ground that, the lease containing a provision for royalty for casing-head gas, when sold or used off the premises, that therefore the parties have by contract determined their rights and liabilities thereunder and a court is not authorized to construe it differently.

This contention presupposes that casing-head gas and gasoline are synonymous, which is not correct. Casing-head gasoline is produced from casing-head gas, but after such gasoline is extracted there still remains the gas, which is no part of the gasoline. Connellee v. Magnolia Petroleum Co., supra. Many wells produce no oil, but only gas which is rich in gasoline content, and the gasoline

produced therefrom is called casing-head gasoline; therefore the royalty provision stated did not provide any royalty for gasoline and none for casing-head gas, except when used or sold off the premises, which clearly means when such gas is used for fuel only.

[4, 5] In the Connellee Case, supra, the proof showed the lease was prepared by the present defendant. The lease there considered and those now under review are identical in the obligations created. Among the cardinal canons for the interpretation of contracts are that the language therein used will be construed most strongly against the party using it, and that an interpretation which makes the agreement fair and reasonable will be preferred to one which leads to harsh or unreasonable results. Williston on Contracts, §§ 620, 621.

[6] With the determination in the Livingston Case that gasoline is oil, we are unwilling to say that the royalty provision for the payment of the insignificant sum of $25 per year for casing-head gas when used for fuel should be construed as conveying to defendant the gasoline in all the gas produced from the lease, which gasoline is alleged to be of the value of many thousands of dollars annually. To our minds it would be as reasonable to say that a lease for salt mining, providing for a royalty on all salt mined and a small rental on water wells, when water only was found, should be construed as giving the lessee the right to the salt by paying the water rental where the salt was found in solution and brought out in liquid form and then separated from the water. The conclusion is that the royalty provision for $25 per year for casing-head gas when used or sold off the premises related to the use of such gas for fuel and did not relieve defendant of its obligation to pay for oil produced, whether such oil is brought up in liquid form or in the form of vapor with the gas and then separated from the gas and reduced to its natural state.

That part of the judgment sustaining the demurrer is reversed.

[7] Plaintiffs did not file any assignments of error presenting the ruling just reviewed, but complain of it by propositions only, yet the error is fundamental and need not be assigned to be considered. City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518. See cases cited in Suhre v. Kott (Tex. Civ. App.) 193 S. W. 417.

Defendant, Magnolia Petroleum Company, presents a number of assignments attacking the judgment against it for damages as shown above. On the submission it was agreed by plaintiffs that said company under its lease had the right to use the premises for the storage of salt water produced from the oil wells operated and drilled by it on plaintiffs' premises and was only liable for negligence in respect to such salt water. This standard seems to us to comport with reason and fairness, and will be applied in disposing of the questions raised by the appeal of the Magnolia Petroleum Company.

The points discussed hereinafter are properly presented by the defendant and based on appropriate exceptions duly taken on the trial. The petition, while perhaps good as against a general demurrer, does not explicitly state that the acts complained of are negligent or wanting in ordinary care, nor that the injury to the land was proximately caused thereby. In view of another trial, it is suggested that the petition be amended so as to conform to the requirements of an ordinary common-law action for negligence. Poteet v. Blossom Oil & Cotton Company, 53 Tex. Civ. App. 187, 115 S. W. 289.

[8] As stated, the damage alleged to have been done to the land was claimed to be permanent; under these allegations, plaintiffs could not recover for an injury to the premises temporary in character. Ehlert v. Galveston, H. & S. A. Ry. Co. (Tex. Civ. App.) 274 S. W. 172; City of Honey Grove v. Mills (Tex. Civ. App.) 235 S. W. 267.

[9] The evidence was conflicting as to whether the damage inflicted by the salt water was permanent. There was evidence that no crops would grow on the land since the salt water had been permitted to flow thereon. The court did not submit to the jury any issue as to whether the injury to the land was permanent or not, nor instruct them as to the measure of damages applicable to plaintiffs' pleading; for these omissions the judgment must be reversed. City of Honey Grove v. Mills, supra; Glasscock v. Shell, 57 Tex. 215; H. & T. C. Ry. Co. v. Buchanan, 38 Tex. Civ. App. 165, 84 S. W. 1073.

[10] Plaintiffs seek to avoid the effect of the omission noted on the ground that no special charge was requested by defendant stating the correct measure of damages; if this contention was ever tenable it is no longer so. Under our present statutes defects in charges on account of omissions may be reviewed by lodging exceptions thereto without requesting a special charge. G. C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183.

[11] Where there is a jury trial, it is likewise necessary to submit all the issues requisite to a recovery by plaintiff, and such issues cannot, where the evidence is conflicting, be determined by the court except by agreement. Texas, etc., Trans. Co. v. Winters (Tex. Com. App.) 222 S. W. 541; G. H. & S. A. Ry. Co. v. Price (Tex. Com. App.) 240 S. W. 524.

[12] Another trial being in prospect, we forbear a discussion of the evidence in detail, but believe the evidence sufficient to take the case to the jury on the question of negligence, as there was evidence that defendant conveyed the salt water away from certain of the wells to the north and contrary to the natural drainage of the land, and thereby

causing such salt water to run over the tillable land when it could have been conveyed the same direction south and to plaintiff's pasture causing no injury to the tillable land.

[13, 14] Considering evidence that for a time a large quantity of salt water was produced with the oil saved, a charge of proximate cause should be given. Under the rule applied, it is a question as to how much damage would inevitably have been suffered by plaintiff by the conveyance and storage of the large quantity of salt produced in operating the wells for oil. The injury necessarily arising from the storage of such salt water and not caused by defendant's negligence would be "damnum absque injuria."

[15] Defendant's special charge instructing the jury as to defendant's right to use the premises for necessary operations was properly refused, for the reason that the instruction further undertook to tell the jury that if the pits in which salt water was stored were necessary or convenient, that such use would not constitute negligence, in effect invading the province of that body, and therefore a charge on the weight of the testimony. International & G. N. Ry. Co. v. Locke (Tex. Civ. App.) 67 S. W. 1082.

[16] Proper instructions should be given as to the effect of plaintiffs' having consented to the location of certain of said pits. No recovery could be predicated on the location of such salt water pit at certain place, if done by the direction of plaintiffs. If such pit was negligently operated thereafter, recovery may be allowed for such negligence.

For the errors indicated, the judgment is reversed and cause remanded. Cost of appeal is taxed one-half to plaintiffs and one-half to defendant.