## F. T. Hockaday v. E. F. Wortham.

### Decided January 6, 1900.

**1. Evidence—Self-Serving Declaration—Nuisance.**

In an action for damages and for the abatement of a nuisance caused by defendant's erection and use of a barn, it was error to allow plaintiff to give in evidence a letter written by him to defendant shortly before suit was filed, containing a carefully prepared, argumentative, and self-serving statement of plaintiff's contention and grievances, coupled with a demand for the removal of the nuisance.

**2. Nuisance—Damages—Jury.**

In an action for injury to the comfortable enjoyment of property by reason of a nuisance on adjoining premises, no precise rule for ascertaining the damages can be given, and their amount must therefore be left to the jury.

**3. Same—Barnyard a Nuisance.**

Where a barn and barnyard are used and kept as a sort of breeding ground for live stock and as a place to carry on a dairy business, materially interfering with the comfortable enjoyment of a residence on adjoining premises, the case is one of nuisance.

**4. Same—Permanent Injury—Injunction.**

Where a barn is maintained in such manner as to constitute it a nuisance to plaintiff residing on adjoining premises, he is entitled to an injunction to have it abated; or, if its owner has declared an intention, over objections and protest, to keep it there permanently, plaintiff may recover damages as for a permanent injury, but can not claim such damages and relief by injunction also.

APPEAL from Fannin. Tried below before Hon. E. D. McClellan.

*Galloway & Templeton, Hazlewood & Smith, Gross & Gross,* and *G. W. Wells,* for appellant.

*Hale & Hale* and *Taylor & McGrady,* for appellee.

STEPHENS, Associate Justice.—Appellant was sued by appellee for maintaining a nuisance, and prosecutes this appeal from a verdict and judgment against him for $500 damages, given as compensation for the discomfort to which appellee and his wife had been subjected by the nuisance. Because the court refused to abate or enjoin the nuisance, appellee also appeals.

The basis of appellee's claim, both for the damages recovered and for injunction, was thus given in his testimony: "I am a man of family. Have a wife, Ida Wortham, and two children, girls, aged 10 and 5 years respectively. Own and have resided on for the last fifteen years the south half of block No. 83 of the city of Honey Grove, in Fannin County, Texas, bounded on the south by Hickory Street, on the west by Twelfth

Street, and on·the east by Thirteenth Street.   My residence is situated on said south half of lot, which is about one half acre, about the middle thereof, and fronts south.   It is about thirty feet from my front porch to Hickory Street.   The defendant owns the block next south of my residence, containing one acre.   At the time I built my residence, and up until about the year 1895, this block was vacant.   My residence is situated in one of the most desirable residence portions of the city.   My residence is a cottage with seven rooms, and I have trees in my yard, shrubbery, a well and stable on the rear of my lot, and other improvements, including fences, such as to make my home a desirable one.   In the fall of 1895 the defendant built upon the northwest corner of his lot a large barn, extending twenty-six feet east and west and forty-two feet north and south,· and about twenty feet high, with two windows in the north side and three openings in the west about three feet square, about five feet from the ground, with windows with glass sashes.   In the year 1896 the defendant built an addition to the east side of said barn, twenty-six feet north and south and thirty-four feet east and west, about twenty-five feet high, making the barn east and west in all about sixty feet.   As the barn since its erection is almost unbearable to myself and family in front door, and about ninety-eight feet distant.   In cold weather the windows of the barn are kept closed, and in warm weather they are left open.   In 1895, when defendant began building his residence on the lot south of me, I had a talk with him and asked him not to build a barn on the northwest corner of his lot, or in front of my residence, and he assured me that he would not do so.   He said he would not treat a neighbor that way.   I told him I was glad to know it, for my wife was very uneasy about it.   Later on he did begin the erection of said barn, and I again approached him on the subject.   This was before he completed the first part of the barn.   I told him it would ruin my premises and endanger the health of my family, and that I regarded it as a nuisance. He said that he was only going to build a small barn for family use, and promised me that he would not keep his cattle in it.   As soon as he erected the barn he began keeping quite a number of cattle, as well as two or three horses, some hogs, a stud horse, bull and boar, and dogs therein for dairy and breeding purposes, and the stench arising therefrom became very offensive to the occupants of my residence.   I again went to him and informed him of this unisance and asked him to remedy it and remove his cattle and barn, and he said he would in a short while; that he was keeping his cattle there to please his wife, to whom they belonged.   He failed to do this, and later on I approached him again, and he then replied that it was his property and he was going to use it as he pleased, and he has continually ever since kept in said barn and barn lot connected with the same on the south, from eighteen to twenty-five head of Jersey cows and younger cattle, one Jersey bull, a stallion, some hogs, and a boar and some dogs, for dairy and breeding purposes, selling milk and butter to the public, peddling it out around over the town, and the public bringing their cows, mares, and sows there and breeding them

to defendant's male animals there for hire. These things have been continuous ever since he built his barn. His barn and barn lot cover about one-fourth of an acre. The stench that arises and has arisen from the barn since its erection is almost unbearable to myself and family in my residence. It has made me sick two or three times, and has made my wife and children sick. These animals kept in the barn make very disturbing noises. The stallion squeals, the bull roars, and the dogs keep up a continuous barking at night. They bark like dogs do when they are breeding."

Other portions of his testimony, together with that of his wife, made the case of discomfort even stronger.

On the other hand, there was testimony to the contrary; and in several particulars the testimony of appellant contradicted that of appellee. For instance, appellant, besides showing that the case not so bad as appellee's evidence made it appear, further testified: "Neither the plaintiff nor any other person ever made objection to me about my building the barn where I did. Plaintiff never said anything to me about the barn in any form whatever, save the letter which he wrote me on February 12, 1897, from Sherman, read in evidence."

Since error is assigned by appellant to the admission in evidence of the letter thus referred to, over the objection that it was self-serving, it is here inserted:

"SHERMAN, TEXAS, February 12, 1897.

"F. T. Hockaday, Esq., Honey Grove, Texas: Dear Sir—Referring back to the time when you built your residence, it will be remembered that you stated that you would not build a barn on the back of your lot, but believing perhaps that it would not injure any of your neighbors, you did afterwards erect one. I dislike very much to raise any question or to write you about it, but feel it my duty to protect my home and the health of my family. I can not bear it any longer, and I ask you as a friend and neighbor to remove it and cease keeping cattle so near my front door. The comfort and perhaps the health of my family is endangered, and the value of my property greatly impaired. I would have spoken or written to you sooner, but I have thought that you would realize the situation yourself, and believed that when you did you would act justly in the matter and remove your barn, cattle, etc. I consider the situation presented there now as a nuisance. Will you please write me at once what you will do in the premises. Yours very truly,

"E. F. WORTHAM."

This letter was evidently read to the jury for effect merely, for which purpose it had apparently been written not more than twelve days before suit was brought. It was clearly objectionable as testimony in the case, and was even a corroboration in advance of subsequently contradicted portions of appellee's own testimony, as will be seen from the quotations above made from the testimony of appellee and appellant respectively, and was thus self-serving, to say nothing of the argumentative form in

which the contents of the letter were so effectively stated. True, the points of contradiction to which this corroboration immediately related were of minor importance, but what effect it may have had in the mind of the jury upon other and more important points of conflict between appellant and appellee we have no means of determining. It at least had a tendency to swell the amount of the damages, which in cases like this must be left largely to the discretion of the jury, as we shall presently see.

We are therefore constrained to sustain the assignment complaining of the admission of this letter in evidence, written as it was by appellee just before the bringing of the suit, and containing as it did a carefully prepared, argumentative statement of his contention and grievances. Appellee should have been content to rest his case on the oral testimony of himself and other witnesses, without undertaking to give to the jury as evidence also the ex parte written statement previously made by himself.

The charge of the court submitting the issue of damages, to which the twelfth error is assigned, seems somewhat subject to the criticism that it authorized a recovery if the acts complained of were calculated to interfere with the comfortable enjoyment of appellee's home, whether appellee and his wife were thereby subjected to discomfort or not. In a subsequent paragraph of the charge, however, this seems to have been substantially corrected as follows: "If you find for plaintiff under the foregoing instructions, you will assess his damages at such sum as in your judgment will compensate plaintiff for the physical discomfort suffered or endured by plaintiff and his wife in the enjoyment of their home."

But this paragraph is also complained of, and plausibly so, in view of a well-known line of decisions in this State, in that it did not confine the jury to the evidence in estimating the damages, as it properly should have done, though it would seem to be sufficient if the decision of this court in Railway v. Harmonson, 22 Southwestern Reporter, 764, was correct.

The third proposition under this assignment reads: "Plaintiff is not entitled to recover damages for being deprived of the enjoyment of his home."

We answer this with the following quotation from Wood's Law of Nuisances, page 1001, section 866: "In the case of an action for an injury to the comfortable enjoyment of property, by a person in possession, no precise rule for ascertaining the damage can be given, as, in the very nature of things, the subject matter affected is not susceptible of exact measurement. Therefore the jury are left to say what, in their judgment, the plaintiff ought to have in money, and what the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the nuisance; and whether the verdict is large or small, if, in view of the evidence, it has any reasonable foundation, it will not be disturbed because it is too small on the one hand, or too large on the other."

Without further noticing specifically appellant's numerous assignments of error and still more numerous propositions, we will, in view of another trial, state briefly our conclusions upon some of the issues of law raised by appellee's cross-assignments.

The authorities seem to warrant us in holding that if appellant kept and used his barn and barnyard, not as such places are usually kept and used, for the convenience of the home, but as a sort of breeding ground for livestock, or even as a place to carry on a dairy business, and by so doing materially interfered with the comfortable enjoyment of appellee's residence, substantially as described in his testimony quoted above, the case was one of nuisance. True, these were legitimate business pursuits, and appellant had the right to engage in them, but he could and should have found some other place for doing so—a place where such pursuits would not "work hurt, inconvenience, and damage" to the occupants of residence property.

Appellee was therefore not only entitled to recover damages up to the time of the trial to compensate him for having been deprived of the comfortable enjoyment of his property, but also, as contended by appellee, to an injunction restraining appellant from such uses of his barn and barnyard as would amount to a nuisance. Burdett v. Swenson, 17 Texas, 504; Commings & Geisler v. Stevenson, 76 Texas, 642; Railway v. O'Maley, 45 S. W. Rep., 227; Railway v. Baugh, 80 Texas, 56; Shiras v. Olinger, 50 Iowa, 571; 1 High on Injunc., 3 ed., sec. 775.

It seems to have been held in Railway v. Baugh, supra, that the depreciation of the value of the property injured by the nuisance is not the measure of the damages where the injury is not of a permanent character and the party aggrieved may cause the nuisance to be abated. But see in this connection what was said of this case in Railway v. O'Maley, supra.

If, as further contended by appellee, he was entitled to recover as the measure of his damages a sum of money equal to the depreciation in the value of his property, which we are not prepared to deny, in view of the expressed purpose of appellant to continue the nuisance, he should have elected that remedy, for he could not recover such damages and in addition have the cause of the injury so treated as permanent removed by injunction.

Because the court erred in admitting appellee's own letter in evidence over the objection that it was self-serving, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*