## BESTEIRO et al. v. BESTEIRO et al.
### (No. 8174.)

Court of Civil Appeals of Texas. San Antonio.
March 20, 1929.

Rehearing Granted June 12, 1929.

Rehearing Overruled July 3, 1929.

See, also, 7 S.W.(2d) 124.

Seabury, George & Taylor, of Brownsville, for appellants.

Canales & Eidman, of Brownsville, for appellees.

SMITH, J. In 1918, at the time of the occurrence of the transaction out of which this controversy arose, Julia Perez de Besteiro, now deceased, owned a substantial estate in Cameron county. She had four sons and three daughters, one of whom, Estolia, was married, and the other two, Rosalia and Maria Inez, unmarried. The two unmarried daughters lived with their mother, but the other children lived apart, in their own homes. On May 24, 1918, the mother executed and delivered a general warranty deed, conveying substantially all her property to one of her unmarried daughters, Maria Inez. The recited consideration for this conveyance was that the grantee would take care of, and provide for, her mother, the grantor, during the latter's life time, and give her a Christian burial at her death, and would provide for the remaining unmarried daughter, Rosalia, until she married. This deed of conveyance was filed for record on the day it was executed, and was duly recorded.

The mother continued, as before, to reside with the two unmarried daughters, and was cared for by them, until she died in 1928, ten years after the execution and registration of said deed. And Maria Inez, the grantee, gave her mother a Christian burial, and provided for her sister Rosalia, until the latter's marriage shortly thereafter. By these means the grantee performed in full the consideration exacted of her in the deed of conveyance.

The mother died in January, 1928, and in March thereafter all her surviving children other than the daughters Maria Inez and Rosalia brought this suit against the two daughters last named to recover the property conveyed by the deed mentioned above. The suit was brought primarily in the form of trespass to try title, and specifically to set

aside and cancel the deed in question. As stated in appellants' brief:

"The ground upon which the deed was sought to be canceled and set aside was that for many years prior to and at the time of the execution of the deed, and continuously up to the time of the death of Julia Besteiro, deceased, on the 26th day of January, 1928, Julia Perez de Besteiro was a very old woman, feeble in mind and body, suffering from diseases that rendered her weak mentally and peculiarly subject to the power of suggestion, and easily controlled and influenced by those associated with her, and that Maria Besteiro and Rosalia Besteiro, prior to her marriage, had lived constantly for many years prior to the execution of the deed and continuously up to the death of the old lady, with their mother, and by reason of undue influence exercised prior to the execution of the deed, at the time thereof, and continuously up to the death of the old woman, on the part of Maria Besteiro and Rosalia Besteiro, the mother was caused to execute and deliver the deed and to remain inactive up until the time of her death; and by reason thereof the deed was null and void. The case was submitted to the jury on special issues, and the jury, in answering the first issue submitted to them by the Court, found that Julia Perez de Besteiro was not laboring under the undue influence of Maria Besteiro or Rosalia Besteiro at the time she executed and delivered the deed in question; and on that verdict the Court rendered a judgment that plaintiffs take nothing by their suit, and awarding the title to the property in controversy to Maria Besteiro."

Rosalia Besteiro and her husband disclaimed, but the remaining children other than the appellee Maria Besteiro have appealed upon the sole contention that the trial judge materially erred in his charge to the jury.

As has been shown, the cause was submitted to the jury upon special issues, which were confined to an inquiry into the question of whether or not the grantor in the deed in controversy was unduly influenced by her two unmarried daughters to execute that instrument, and to take no steps thereafter to set it aside. In connection with those issues, the trial judge defined undue influence, and no objection is made to the propriety or language of that instruction. But in connection with that instruction and the issues submitted thereunder the court further charged the jury:

"The burden of proof is on the plaintiffs to make out their case by preponderance of the evidence, and if they have failed to do so, they cannot recover.

"You are further charged that there is no presumption of undue influence arising from the near relation of the parties in a conveyance from a parent to a child, and in such cases the burden is upon the party attacking the conveyance to show by preponderance of

evidence that the deed executed by the grantor in the instant case was not the free and voluntary act of the grantor, but the same was obtained through undue influence.

"You are further charged that under the law the agreement to take care of the grantor during her natural life, providing for her all necessaries of life and taking care of the grantor during any and all sickness and paying all necessary expenses for medical treatment, and in the event of death of the grantor, to give the said grantor a Christian burial and pay all funeral expenses, constitutes, under the law, a good and valuable consideration to sustain said conveyance, and that the deed in controversy in this suit, from Julia Perez de Besteiro to her daughter Maria Inez Besteiro, dated the 24th day of May, A. D. 1918, was executed for a good and valuable consideration, under the law."

Appellants assign error against these supplementary charges, upon the grounds, in effect, that they are general in their nature, and have no proper place in a case submitted upon special issues; that they are upon the weight of evidence, and single out and give undue importance to particular facts which should be considered by the jury along with all other facts and circumstances in the case, without emphasis or deprecation from the trial judge; that the repetition and reiteration of the instruction that the burden of proof rested upon appellants to prove their whole case and to prove each of the particular elements stressed by the court gave undue and hurtful prominence to the burden of proof rule. These objections to the charges complained of are undoubtedly well taken.

■ In cases which are submitted upon special issues, the trial judge "shall submit the issues of fact to the jury" (article 2184, Rev. St. 1925), and "shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues" (article 2189). The effect of these provisions is to restrict the authority of the trial judge, and to prohibit him from giving general instructions upon the law, or upon specific phases of the law arising in cases submitted upon special issues. Owens v. Imp. Dist., 115 Tex. 263, 280 S. W. 532; West Lbr. Co. v. Keen (Tex. Com. App.) 237 S. W. 236; Humble Oil Co. v. McLean (Tex. Com. App.) 280 S. W. 557; Houston & T. C. Ry. v. Stribling (Tex. Civ. App.) 293 S. W. 890.

■ The instruction in this case that "there is no presumption of undue influence arising from the near relation of the parties in a conveyance from a parent to a child" has no proper place in a case submitted upon special issues. For, while it is true that such presumption exists, it is not a conclusive presumption, and the facts upon which it is based should go to the jury along with all other facts and circumstances relevant to the spe-

cial issues, without any instruction from the court which could lead the jury to give to the facts thereby stressed more weight and value, as against appellants, than those facts are entitled to. The charge was clearly upon the weight of evidence, and was prejudicial to appellants' case. Heldt v. Webster, 60 Tex. 207; Noblett .v. Harper (Tex. Civ. App.) 136 S. W. 519. For a like reason it was reversible error for the court to instruct the jury that the consideration recited in the deed in controversy was in law "a good and valuable consideration to sustain said conveyance."

So were the charges complained of erroneous in repeating and reiterating the admonition that the burden of proof rested upon appellants to prove the matters pointed out in the charge. Owens v. Imp. Dist., supra.

It is quite clear that the several errors in the charge require· reversal, unless, indeed, judgment should have been rendered in favor of appellees in any event, under the pleadings and evidence. By this process the inquiry is narrowed to appellees' contention that the pleadings and evidence did not raise the issue, vel non, of undue influence. This contention is controlling, for, if appellants made no case for the jury upon this issue, upon which they founded their whole cause, the court should have directed a verdict for appellee; whereas, on the other hand, if the issue was supported by such pleadings and evidence as entitled the parties to a jury determination of it, then it should have gone to the jury unhampered by the erroneous instructions discussed above.

Mrs. Besteiro was 67 years of age when she executed the deed in controversy, and 77 when she died. She was reticent, reserved, positive, perhaps austere, in her nature. For many years prior to her death she lived a very quiet and secluded life in her home with her two unmarried daughters. She rarely left her home, except to attend religious services; she never .visited her neighbors or her children, and although a woman of large and varied affairs, she never called upon those with whom she had dealings, but always had them come to her in her home. Although having constant dealings with her banks, she sent her daughters to those institutions to transact small or routine matters, and had the bank officials come to her in the larger or more important transactions. When she required the services of attorneys, she had them come to her house and there transact the business she had with them. She suffered from a malady peculiar to her sex, the very nature of which apparently deterred her from having it treated by physicians. It is inferrable from appellants' evidence that this ailment weakened her physical condition, with some, apparently negligible, reaction upon her mental condition.

Prior to 1918, in apparently the usual and normal course, Mrs. Besteiro's three sons and the oldest daughter married and left the parental home for homes of their own. The sons have apparently prospered, and are men of considerable affairs. · Each of them, from time to time, in one way or another, thereafter had considerable dealings with his mother, in connection with either his own affairs or hers. They assisted her in managing her property, and they borrowed money from her in aid of their own projects, and she purchased an interest in a large mercantile business from one of them. Apparently, as a result of these transactions the mother became dissatisfied with her sons' conduct, and apparently lost her .previous confidence in their ability, and perhaps their integrity, so that during the last few years of her life she had but little to do with them. Through all those years, however, she clung more closely to her two younger and unmarried daughters, who continued to reside in the old homestead with her, and cared for her. Finally, she died as a result of a sudden, brief, and admittedly natural illness.

Now appellants contend that the mother's physical ailments operated to weaken her mental condition and will power; that her relation to her two daughters, Rosalia and Maria Inez, and her·constant daily association with them, and them only, served to render her the natural victim of their alleged machinations; that their wills, being the stronger, dominated hers; and that they exercised this power to turn her against her other children, and improperly influenced her to convey her whole estate to Maria Inez, thereby cutting off the other children from participation in that estate. We will analyze the testimony offered in support of this contention, viewed in the light most favorable to appellants, as we are required to do in determining if a jury case was made by them.

The evidence in support of the contention that Mrs. Besteiro was so enfeebled in body and mind as to make her an easy prey to the influence of her daughters is not impressive. It is true that she was afflicted with a malady which was calculated to gradually weaken her body, and that this condition had a tendency to lessen her power of mental resistance. It is also true that one or two witnesses testified that she was very quiet in her demeanor about the home; that much· of the time she sat in meditation, or abstraction, and spent several hours of the day in prayer at the family altar; that she visited not at all, and had no visitors, spending all her time in the company of her two daughters, to whom she was obviously attached in the deepest devotion; that she was forgetful about the smaller affairs of her household, sometimes upbraiding the ·servants for neglecting tasks she had assigned to them, accusing them of forgetting her instructions when in fact they had not forgotten, but had performed, those tasks. This appears to be the sum total of the proof of Mrs. Besteiro's dis-

abilities. On the other hand, however, it is conclusively shown that, when her business affairs required attention, she took them vigorously and promptly in hand. When her accounts at her bank required adjustment, as often occurred, she sent for her bankers, and, when in response they came to her home, she directed them intelligently and efficiently. When she required legal services, she had her attorneys come to her home, where she clearly and positively instructed them as to her wishes, and saw that they were carefully complied with. Even after she had conveyed her estate to her daughter, she still exercised control over the rents and revenues thereof, investing them in interest-bearing deposits, which she transferred to her daughter. It is true that there was testimony, which a jury might have converted into a finding, that the girls sought to prevent their brothers from seeing their mother when they called at the home for that purpose, but the same witnesses testified that in this course the girls were inspired with the belief that the brothers sought to confer with the mother for the purpose of "getting more money" from her; it appearing from the record that the mother had theretofore been liberal in her loans to the sons, although they appear to have repaid those loans. So was there testimony that the girls often spoke unkindly of their brothers, but it is shown by the same witnesses that, whenever they did so in the mother's presence, the latter ordered them to desist, and they always promptly obeyed, thus destroying appellants' theory that they exercised any substantial influence over their mother's attitude towards her sons.

One witness, a former servant in the family, testified that she had often heard the girls discuss with their mother the question of the latter conveying all her property to them before she died, but there was no intimation in this testimony that in such conversations the girls endeavored to wheedle or threaten their mother into this course, although the same witness testified that the girls did "probably" convince their mother that she should sell the family ranch, which she finally sold. Living alone together, being always together, and having no company, it would have been quite natural that the three should discuss together the purpose of the mother to convey her property to the two unmarried girls, to the exclusion of the other children, who had long since married and gone their several apparently prosperous ways. Such discussions were necessary in order to settle upon the covenants constituting the consideration for the conveyance. Some of the witnesses testified that Rosalia "dominated" her mother; that in controversies arising between the three "Rosalia would be the one that dominated." But there is no evidence that this was a sinister domination, or an undue influence, and certainly it was not exercised to Rosalia's benefit, for she did not profit by the conveyance, which cut her off along with appellants, except to provide for her support pending her marriage. So far as the record shows to the contrary, it was the natural influence which grows out of mutual affection and filial duties, obligations, and protection, and in no degree that baleful influence which would selfishly lead the object of it into a course of injustice to others, and of profit to her. As was said by Chief Justice Hemphill, speaking for a great court in a case not unlike this in principle:

"Some of the witnesses say, that she was influenced more by her son, who resided with her, than by any one else. But it is evident, that the influence of which they speak, was not the kind of influence which is meant, when the law speaks of undue influence. It was the influence which a dutiful child may exert over a parent, by acts of filial duty and obedience; the influence which naturally flows from mutual confidence and affection. That is not undue influence; it is not the kind of influence which is used for an undue or injurious purpose. Influence may be proper, or improper. That is proper influence, which one person gains over another, by acts of kindness and attention, and by correct conduct. Improper influence is that dominion acquired by any person, over a mind of sanity for general purposes, and of sufficient soundness and discretion to regulate his affairs in general, which prevents the exercise of his discretion, and destroys his free will."

Undue influence may not be inferred from the relations of these parties, nor from their constant and exclusive association with each other and the resultant opportunity for the exercise of influence. Those relations and that character of association may well account for the disposition the mother made of her remaining estate. Old age was encroaching upon her. A dread malady had taken hold upon her, the specter of invalidism stood before her in the uncertain distance. One by one her other children had married and gone out into the world to work out their own destinies in the bosoms of their own families, in their own homes, never to return to her as in their younger days. In the very nature of things, she could not look to them for the shelter and care and associations so essential to the peace and comfort of her remaining years. In this situation, what was more natural than that she should turn to the two children who were still with her, who had been her constant companions in those recent years, and with whom her relations were of the tenderest and most affectionate nature; who were caring for her with the utmost loyalty and devotion? One of them, Rosalia, was soon to be married, or at least she was in fact married a year or so later, and the mother could not look to her for that care

and comfort and companionship she desired for her remaining years. That left Maria Inez, and to her the mother conveyed her property in consideration of her covenant to care for the mother the balance of her life and give her a Christian burial at her death, and to provide for Rosalia until her marriage.

Having determined upon this course, Mrs. Besteiro called in an attorney of well-known integrity and ability, and explained to him her desire and purpose to deed all her property to her daughter, Maria Inez, for the considerations stated. This attorney, without contradiction, testified that this conversation then occurred between Mrs. Besteiro and himself:

"I said, 'Don't you think you are making a mistake, for the very reason that this young lady may marry and go off?' She said, 'No, I know my daughter, she has agreed to take care of me for the rest of my life, and I know she will keep her promise.' I said, 'Of course, I will do whatever you desire in the matter,' and I suggested to her, why don't you make it in the form of a will, and she said no, because she had been advised that a will might be broken and 'I want to convey this property in my lifetime, so I will know that my wishes will be carried out.' "

In pursuance of these instructions, the attorney returned to his office, assembled the necessary descriptions, prepared the deed, and a few days later took the completed instrument to Mrs. Besteiro, and, after it was fully translated and explained to her, she executed, acknowledged, and delivered the instrument with all the requisite formalities of such a transaction. This was done in the presence of several witnesses, two of whom, besides the notary, subscribed as such. This attorney, who had attended to several important transactions for her, both before and after, as well as on the occasion of, this transaction, testified that,

"Mrs. Besteiro was a woman of strong will, and in the conversations I had with her and in my private relations with her what she wanted was done. The girls were present most of the time and sometimes took part in the conversations, but usually she would let them talk and when she was ready she would say 'Now shut up, be quiet, I am going to talk', and she would say what she wanted. She was very reserved and I don't believe I ever saw her on the street, but she was in apparently good health, and her talk to me was that of a woman of more than the usual intelligence of the people of her class, and of a very determined and strong will."

We have endeavored to fairly state the case, so as to embrace those facts which are uncontroverted, and as to those which are controverted we have given appellants' version thereof. We have reached the conclusion that those facts were insufficient to take the case to the jury upon the issue of undue influence, upon which issue, alone, appellants depended for recovery. It follows that the errors in the charge are immaterial to the appeal, and the judgment is affirmed.

### On Motion for Rehearing.

Upon very careful reconsideration of the case in response to appellants' motion for rehearing, we have reached the conclusion that the evidence upon the issue of undue influence was such as to raise an issue of fact that should have been submitted to the jury, under proper instructions. Accordingly, appellants' motion for rehearing must be granted, the order of affirmance set aside, and the judgment reversed, and the cause remanded for another trial.