## CITY OF WICHITA FALLS v. WHITNEY et al.

### No. 12268.

Court of Civil Appeals of Texas. Fort Worth.
Feb. 15, 1930.

Rehearing Denied March 15, 1930.

Harris & Martin, of Wichita Falls, for appellant.

Fitzgerald & Hatchitt, of Wichita Falls, for appellees.

DUNKLIN, J.

The city of Wichita Falls has appealed from a judgment rendered in favor of D. G. Whitney, by the terms of which the plaintiff Whitney was awarded damages in the sum of $2,000 resulting from the pollution of the waters of the Wichita river, contiguous to plaintiff's improved 750 acre farm, and also perpetuating a temporary writ of injunction theretofore issued restraining the city from a further maintenance of the nuisance.

A former appeal to this court from the order granting the temporary writ of injunction resulted in an affirmance of that decree, as shown in 11 S.W.(2d) 404.

The record shows that the tract of land so owned by plaintiff was used by him for farming and stock raising purposes; that it was situated near the corporate limits of the city of Wichita Falls, and that the city maintained a dumping ground near it for the deposit of garbage and waste material, and that the river adjacent thereto was polluted with the drainage therefrom.

After the disposition by this court of the former appeal from the granting of a temporary writ of injunction, the case was tried on its merits, and the following are the issues submitted to the jury with their findings thereon:

"1. You are instructed that it is the duty of the defendant City to exercise ordinary care in the disposal of sewerage and garbage from the City in such manner that the same shall not become offensive to adjacent residents or deleterious to the health and comfort of people in the vicinity of the disposal plant and dump grounds maintained for disposal purposes.

"2. It is a violation of the laws of this State to discharge raw sewerage, or unclean matter, into the waters of the Wichita River so as to pollute the same and render it unfit for domestic purposes.

"3. The pollution of the atmosphere with noxious or offensive gases, stenches or vapors, so as to cause material discomfort or annoyance or injury to health or the enjoyment of property is a nuisance. Bearing in mind, the foregoing definitions and instructions you will please answer the following special issues as you may find from the evidence before you:

"Special Issue No. 1. Were the waters of the Wichita River on the plaintiffs' land polluted by the discharge of untreated sewerage, or unclean matter, into said stream, by the agents of said city, at any time since July 26, 1926? Answer: Yes.

"Special Issue No. 2: If you have answered the foregoing issue 'no,' then do not answer this issue, but if you have said 'yes,' then was the pollution of said stream the proximate cause of any damage to the plaintiffs? Answer: Yes.

"Special Issue No. 3: Was the city dump a nuisance to the plaintiffs as that term has been defined to you at any time since July 26, 1926? Answer: Yes.

"Special Issue No. 4: Is said dump in the manner it is kept a nuisance to plaintiffs at this time? Answer: Yes.

"Special Issue No. 5: Has the maintenance of said dump, in the manner it has been maintained been of damage or injury to the plaintiffs? Answer: Yes.

"Special Issue No. 6: What amount of money, if paid now, would fairly and reasonably compensate the plaintiffs for the injury they have suffered, if any? Answer: $2,000.00.

"In answering this issue you may take into your consideration the pecuniary loss, if any, to the plaintiffs by the existence of the nuisance, if you find it was a nuisance, and the pollution of the stream if you find it was polluted by the defendant city, by reason of the same.

"You will not consider any damages arising from other causes or sources, but only such as you may find, if any, arising directly from the causes alleged.

"You will not consider any depreciation in value of this land but only such damages as you may find that they have suffered by reason of the condition of the water and the odors, if any, coming from said dump and said waters and their effect upon the plaintiffs' comfort and the enjoyment of their property.

"If you find that these conditions constituted a menace to health, you may consider the same, if you find that plaintiffs could not live on the land, by reason of the same.

"You may consider that and if you find that their live stock required extra water and extra expense due to conditions caused by defendant, then you may consider that."

The following are special issues requested by the defendant, with answers thereto:

"1. Was the water in the Wichita River on plaintiffs' land polluted from other sources than the defendant's sewerage and dump at any time since July 26, 1926? Answer: Yes.

"2. If you have answered defendant's requested special issue 'yes,' then did such pollution render said water unfit for stock water? Answer: No.

"3. Did the defendant through its agent exercise ordinary care in the disposal of sewerage and garbage from the city during the period of time from July 26, 1926, to present time? Answer: No.

"4. Was the water of the Wichita River adjacent to and near plaintiffs' lands polluted at any time between July 26, 1926 and the present time? Answer: Yes.

"5. If you have above answered yes to the foregoing issues, then was the acts and conduct of the agents of the defendant the proximate cause of such pollution? Answer: Yes.

"6. Was the city dump a nuisance to the plaintiffs, and their lands and premises, as the term nuisance has been defined to you, at any time since July 26, 1926? Answer: Yes."

It will be observed that the court's instructions to the jury which preceded the issues submitted to them were numbered 1, 2, and 3.

In due time, the defendant presented the following objections to those instructions:

"1. Defendant excepts and objects to the court's special instruction No. 1, (a) because same places upon the city of Wichita Falls the legal duty to dispose of garbage from said city when the laws of the land impose no such duty or obligation; (b) because said special instruction is upon the weight of the evidence, in that it assumes, and the jury will be led to believe from said instruction, that the city has undertaken to dispose of the garbage from the city and the defendant will be prejudiced thereby before the jury.

"2. Defendant excepts and objects to the court's special instruction No. 2(a) because same is not a correct statement of the law, in that before such pollution would be a violation, a stream must be a water course from which water is taken for the use of farm live stock, drinking and domestic purposes; (b) because said special instruction is upon the weight of the evidence, in that it assumes that the Wichita River is a water course from which water is taken or was being taken for the use of farm livestock, drinking and domestic purposes on July 26, 1926, and since said date, and from said special instruction the jury will be led to believe that the court

concludes such state of facts to exist, to the prejudice of the defendant.

"3. Defendant excepts and objects to special instruction No. 3 (a) because same is upon the weight of the evidence, in that the jury will be led to believe that the court is of the opinion that noxious or offensive gases, stenches, or vapors were created by the acts of the defendants. (b) Because said instruction and definition is too broad in its terms and is calculated to prejudice the jury against the defendant and in favor of the plaintiffs."

Those objections will be discussed seriatim.

In instruction No. 1, given by the court, the jury were not told that the city was under the absolute legal duty to dispose of its garbage and sewerage in such manner as not to become offensive or deleterious to the health and comfort of the people in that vicinity, as construed by the defendant, but only that it was the duty of the city to exercise ordinary care to accomplish that result. Nor was that instruction erroneous in assuming that the city had undertaken to dispose of its garbage, since the evidence conclusively established that fact. The evidence also conclusively established the fact that Wichita river was a water course from which water was taken for the use of farm, live stock, and for drinking and domestic purposes.

Instruction No. 3 was substantially a correct definition of the term nuisance, and the giving of such definition was permissible under the provisions of article 2189, Rev. Civil Statutes, and we fail to perceive how it can be said that that instruction was upon the weight of the evidence. Furthermore, the evidence conclusively showed that offensive gases and stenches did emanate from the waters of the river as a result of the garbage deposited by the city on its dumping ground near its banks. The objection that the definition of nuisance was too broad in its terms, and calculated to prejudice the jury against the defendant, was general in its terms and failed to point out in what respect, if any, it was incorrect. Accordingly, we conclude that none of those objections present any reversible error.

By another assignment, which is presented in this court for the first time but not to the trial court, it is insisted that the giving of special instructions Nos. 1 and 2 was fundamental error, in that those were, in effect, general charges given in connection with the submission of the case upon special issues, and were in no sense definitions or explanations of any legal terms used in the special issues which would be permissible under the provisions of article 2189 of the statutes. It is pointed out that instruction No. 2 of the court was based upon article 698, of the Penal Code of this state, which makes it an offense for a municipal corporation to pollute any water course, from which water is

taken for the use of farm, live stock, drinking, and domestic purposes, by the discharge of sewerage or polluting matter therein.

Article 2189 reads as follows: "In all jury cases the court may submit said cause upon special issues without request of either party, and, upon request of either party, shall submit the cause upon special issues raised by the pleadings and the evidence in the case. Such special issues shall be submitted distinctly and separately. Each issue shall be answered by the jury separately. In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. If the nature of the suit is such that it cannot be determined on the submission of special issues, the court may refuse the request to do so, but the action of the court in refusing may be reviewed on proper exception in the appellate court, and this article shall be construed in connection with the succeeding article."

Appellant has cited the decisions in Besteiro v. Besteiro, 18 S.W.(2d) 829, 830, by the Court of Appeals at San Antonio, and McFaddin v. Hebert, 15 S.W.(2d) 213, by the Commission of Appeals. In the case first cited, the judgment of the trial court was reversed on account of a general instruction given in connection with special issues submitted, and after citing the provisions of article 2189, the court had this to say: "The effect of these provisions is to restrict the authority of the trial judge, and to prohibit him from giving general instructions upon the law, or upon specific phases of the law arising in cases submitted upon special issues."

The charge condemned in that case was more plainly subject to the criticism as being a general charge on material issues in the case than the one in the present suit, as will more fully appear by a reading of that decision. And it is to be noted further that it does not clearly appear from the opinion in that case whether the charge was objected to before it was submitted to the jury. At all events, it was not held in that case that the giving of the charge was fundamental error. And after pointing out and discussing the grounds upon which the assignment of error was based, the court concluded as follows: "These objections to the charges complained of are undoubtedly well taken." In each of the cases of Owens v. Imp. Dist. (Tex. Com. App.) 280 S. W. 532, and Humble Oil Co. v. McLean (Tex. Com. App.) 280 S. W. 557, 559, and H. & T. C. Ry. Co. v. Stribling (Tex. Civ. App.) 293 S. W. 890, all of which are cited in the Besteiro Case, supra, it appeared that the general instruction, for which a reversal followed, was duly excepted to by the appellant, at the time of the trial.

In Humble Oil Co. v. McLean, supra, the following was said: "Every party litigant has the right to have his case tried in accordance with such statutory provisions. If this right be violated, *over his objection* [italics ours], by the submission of instructions not authorized by statute, injury to the objecting party is presumed; and, unless it clearly appears that no injury or prejudice results to him, or his cause, he is entitled to a new trial. Railway v. Harrington (Tex. Com. App.) 235 S. W. 188, and authorities there cited."

In West Lbr. Co. v. Keen (Tex. Com. App.) 237 S. W. 236, also cited as an authority in the Besteiro Case, the judgment was reversed because of conflicting findings of the jury.

In McFaddin v. Hebert, 15 S.W.(2d) 213, 216, cited above, the Supreme Court gave an affirmative answer to this question: "Was it reversible error for appellees' counsel to tell the jury if they wanted to return a verdict in behalf of the plaintiffs to answer said Special Issue No. 1 'yes'?"

That question involved assignments of error to argument of counsel only, and, seemingly, what was said by the Commission of Appeals relative to general instructions given in connection with special issues was to show that in order to accomplish the desired ends of article 2189, Rev. Statutes, the argument of counsel is governed by the same restrictions as apply in the submission of special issues. And in that opinion this was said:

"The Court of Civil Appeals states in the certificate that the doubt of that court arises from the following proposition announced by the Commission of Appeals in Railway Co. v. Harling, 260 S. W. 1016: 'We are not to be understood as saying that it would have been reversible error for counsel to tell the jury the legal effect of their answer to a special issue, if the jury did not already know what the legal effect would be for it is not necessary to determine that matter in this case.'

"A careful reading of Judge Chapman's opinion in the Harling Case, supra, will show that he merely held that, when the special issues submitted are such that men of ordinary intelligence would be presumed to know the legal effect of their answers, no injury could result by counsel telling them something they already know. *This holding was then, and still is, the law of this state.* However, in a case like the one at bar, when the issues are such that ordinary men are not presumed to know the legal effect of the answers, then the argument of counsel telling them the legal effect of such answers, coupled with the other circumstances, would, as a matter of law, probably result in injury to the opposite side and is reversible error."

█ It is a general rule of decision that objections made to the charge of a trial court should be sufficiently definite to apprise the

332

court of the errors complained of, to the end that that court may be given an opportunity to so frame the instructions as to avoid such objection.

In the absence of any objection by appellant upon the trial of the case in the court below, on the ground that the instruction complained of was a general instruction on a particular phase of the case, and for that reason was erroneous, we do not believe that the giving of such instruction should be held to constitute fundamental error, for which the judgment should be reversed. It is to be noted that while article 2189 is specific in its requirements pertaining to the submission of special issues, it does not contain any direct provision prohibiting the giving of general instructions such as were given in this case, in connection with the special issues. And we believe that the announcement quoted from the two decisions cited by appellant, to the effect that when special issues are submitted, the trial court is prohibited from giving general instructions in connection with such issues, should be construed as ordinarily applicable only when such charges are given over proper objections thereto upon the trial. And we deem it proper to add that we believe that it should be presumed that the jury already knew that the city of Wichita Falls had no lawful right to pollute the river, which was the general effect of the court's instructions complained of as fundamental error, and that for that additional reason what was said in Railway Co. v. Harling, 260 S. W. 1016, by the Commission of Appeals, and approved in McFaddin v. Hebert, has proper application here, and furnishes additional reason why the assignment now under discussion is without merit.

We do not wish to be understood as holding, and do not undertake to say, that in no instance can fundamental error be assigned to the giving of general instructions in connection with special issues, in the absence of objections thereto on that ground in the trial court, since such general instructions may be of such character as to constitute fundamental error requiring a reversal of the judgment, in the absence of such an objection at the time of trial.

We overrule the contention that the rental value of the land was the only correct measure of damages in a case of this kind.

In Hockaday v. Wortham, 22 Tex. Civ. App. 419, 54 S. W. 1094, 1095, this court held to the contrary in an opinion by Justice Stephens, and the following was quoted with approval from Wood on Nuisance, p. 1001, § 866: "In the case of an action for an injury to the comfortable enjoyment of property by a person in possession, no precise rule for ascertaining the damage can be given, as, in the very nature of things, the subject-matter affected is not susceptible of exact measurement. There-

fore the jury are left to say what, in their judgment, the plaintiff ought to have in money, and what the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the nuisance; and whether the verdict is large or small, if, in view of the evidence, it has any reasonable foundation, it will not be disturbed because it is too small on the one hand or too large on the other."

To the same effect, see Judson v. Los Angeles Suburban Gas Co., 157 Cal. 168, 106 P. 581, 26 L. R. A. (N. S.) 183, 21 Ann. Cas. 1247.

What was said in the Hockaday Case was not in conflict with what was said by this court in Graham v. Moseley, 254 S. W. 130, opinion by Chief Justice Conner, that proof of rental value may be looked to in determining the extent of annoyance and discomfort actually suffered.

We are of the opinion further that the evidence was sufficient to support the finding of the jury on the issue of damages suffered by the plaintiff; nor can we say that issue No. 6 was objectionable, as submitting more than one issue of fact to be determined by the jury, the instruction following that issue being merely a direction as to what they might consider in determining their answer to issue No. 6.

Appellant requested an instruction to the jury that, in arriving at their answers to the special issues submitted, they should not consider any testimony of any witness who testified to a condition existing at any place other than on the land and premises of the plaintiff, and as existed in the water on plaintiffs' land; nor any evidence as to any annoyance or discomfort suffered by any person other than the plaintiffs, with the further instruction that all such evidence was withdrawn from the jury. The plaintiffs introduced many witnesses who lived in the same neighborhood, and who were familiar with the surrounding conditions, all of whom testified as plaintiffs did, to the stenches and odors and pollution of the water from the filth and garbage deposited by the city on the dump, near the stream; and, manifestly, there was no error in refusing to give the instruction so requested.

There was no reversible error in refusing the appellant's request for a submission of the issue inquiring whether or not the water in the river, adjacent to plaintiffs' land, was rendered unfit for stock water by reason of its pollution, resulting from the discharge therein of sewerage and unclean matter by the city, since the evidence showed without controversy that the water was rendered unfit for stock, and by reason thereof it became necessary for plaintiff to put down a well in order to procure stock water.

The findings of the jury, that the pollution of the river was caused by the neg-

ligent acts of the agents of the city, and that the pollution so resulting was the proximate cause of the damage suffered by plaintiffs, necessarily implied that such acts of the city were the sole proximate cause of such damage; especially in view of the court's specific instruction that in assessing plaintiff's damages, the jury should not consider any damages arising from any other source than the city's garbage dump. If the city desired an affirmative presentation of the issue whether or not the pollution resulting from such other sources contributed to the damage sustained by plaintiff, it should have requested the submission of that issue. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. Hence, the decision cited by appellant, City of Corsicana v. King (Tex. Civ. App.) 3 S.W.(2d) 857, has no proper application.

█ This was not a suit for damages to the land, nor for damages for a permanent nuisance, and by the court's instructions the damages awarded were specifically limited to those suffered during the period of two years next preceding the date of trial, which was for a temporary nuisance. Hence, there was no error in perpetuating the temporary injunction theretofore issued, in addition to the award of damages already sustained. Hockaday v. Wortham, 22 Tex. Civ. App. 419, 54 S. W. 1094. The case of Ehlert v. G. H. & S. A. Ry. Co. (Tex. Civ. App.) 274 S. W. 172, cited by appellant, was to recover damages for a permanent nuisance; and the case of City of Coleman v. Price, 54 Tex. Civ. App. 39, 117 S. W. 905, also cited by appellant, was for damages to property as the result of a permanent nuisance. Therefore, neither of those authorities is applicable to this case.

On November 10, 1928, this court affirmed the order of the district court granting the temporary writ of injunction, and on December 8, 1928, overruled the application of the city for a rehearing. The city's application for writ of error from that decision was by the Supreme Court dismissed for want of jurisdiction on February 20, 1929. The judgment on the merits from which this appeal was prosecuted is dated February 21, 1929, and recites that the case came on for trial on that date.

█ Error has been assigned to the overruling of appellant's motion to continue the case filed on February 18, 1929, the motion being presented and overruled on the same day it was filed. As one of the grounds for continuance, it was alleged that the application for writ of error from the affirmance by this court of the order granting a temporary writ of injunction was then pending in the Supreme Court. There is no merit in this assignment, since, in the absence of the temporary injunction, the plaintiffs had the right upon trial of the case on its merits to recover damages already caused by the nuisance complained of, and to perpetually enjoin a continuation thereof. Hockaday v. O'Malley, supra. Furthermore, no bill of exception was taken by appellant to the order overruling the motion for continuance, the absence of which is of itself fatal to this assignment. Rule 55 for district and county courts; T. & P. Ry. Co. v. Mallon, 65 Tex. 115; Darby v. White (Tex. Civ. App.) 165 S. W. 481.

For the reasons stated, all assignments of error are overruled, and the judgment of the trial court is affirmed.