## FORD MOTOR CO. v. MADDEN et al.
### No. 1069.

Court of Civil Appeals of Texas. Waco.
June 18, 1931.

Rehearing Denied Sept. 24, 1931.

Turner, Rodgers & Winn, of Dallas, and Spell, Naman & Howell, of Waco, for appellant.

Richey & Sheehy, of Waco, for appellees.

BARCUS, J.

This suit was instituted by appellee Mrs. Madden for herself and minor son, Eugene Madden, against appellant to recover damages occasioned by the death of T. E. Madden, husband of Stella and father of Eugene.

Appellant, a foreign corporation, maintained a branch office in Dallas where it assembled and sold Ford and Lincoln cars. D. C. Woods and Snyder Atwell were, for appellant, in charge of the department in Dallas for the sale of Lincoln cars. Appellant appointed certain designated dealers in Texas to sell the Lincoln cars. In 1928 there were approximately two hundred and forty-one such dealers. Each dealer was required to purchase and keep on hand one or more Lincoln cars to be used for demonstrative purposes. It was the duty of Mr. Atwell to visit said dealers from time to time and inspect the cars which were being used as demonstrators and see that same were kept in good repair. He testified that it was necessary for him to, and he did, drive said cars in order to ascertain whether same were in good order. It was his duty to assist the local dealers in the sale of Lincoln cars, and whenever he or the Ford Motor Company learned of a prospective purchaser of a Lincoln car, he took the matter up with the local dealer in said territory.

On August 1, 1928, Mr. Atwell, having learned of a prospective purchaser of a Lincoln car at Lampasas, came to Waco, accompanied by D. C. Woods, to see Cruger Company, the local dealer for the Lincoln cars in the territory embracing Lampasas, and informed it of the prospective purchaser and requested Cruger Company to permit him to take the Lincoln car, which Cruger Company had for demonstrating purposes, to Lampasas to see if same could be sold to the prospective purchaser. T. E. Madden, the salesman for the Lincoln cars with Cruger Company, accompanied Atwell and Woods in the car to Lampasas. On the trip out Mr. Woods drove the car to Belton and either Mr. Madden or Mr. Woods drove same from there to Lampasas. On the return trip, Mr. Atwell drove the car to a point within about four miles of Waco, at which place he collided with a White truck parked on the side of the road, which resulted in the death of both Mr. Madden and Mr. Woods. While at Lampasas some work was done on the car by a mechanic, adjusting the lighting system. On the return trip, the parties took their evening meal at Temple.

Mr. Atwell testified that in making the trip to Lampasas, as well as on the return trip, the car was driven at a rate of speed from forty to fifty miles; that they could tell when the car was going from forty-eight to fifty miles because at that rate the car would make a peculiar roar showing or indicating that it was running at said rate; that he was an experienced driver and was familiar with the Lincoln car and with the highway between Temple and Waco; that before he reached Lorena he turned on the lights of the car; that the lights were not in perfect condition, but were sufficient for him to drive by; that there were no cars coming toward him and none behind him with lights to either hinder or help him in seeing; that just before the collision, he came up a hill or incline, and that as he came over the top of the hill, he saw a Ford truck headed toward Temple parked on his (Atwell's) left-hand side of the road and on the Ford truck's right-hand side; that in order to keep from hitting the Ford truck, he turned his car to the right, thereby placing his car farther on the right-hand side of the

highway, when he then for the first time saw the White truck parked on the right-hand side of the road headed toward Waco, the way he (Atwell) was going; that in his opinion the White truck was not more than thirty or forty feet from the Ford truck and that same was parked in such way that he was not able, at the rate of speed he was driving, to avoid colliding with the White truck; that he struck the left rear end of the White truck with the right front end of the Lincoln car.

The testimony tends to show that the Ford truck had stopped on its right-hand side of the road by reason of a flat casing; that the inside or left wheels thereof were from eight to twenty inches on the hard-surfaced portion of the road and the remainder on the gravel or shoulder side; that the White truck going toward Waco had, by reason of engine trouble, stopped about two hundred feet from the Ford truck and was parked on its right-hand side of the road with the inside or left wheel extending from eight to twenty inches on the hard-surfaced portion of the road; that at said point the hard-surfaced portion of the road was fifteen feet wide and the gravel portion on each side was five feet, making the total width of the road twenty-five feet; that if the Ford truck and the White truck, under the most favorable aspect of the testimony, had been standing opposite each other, there would have been a space between them of from ten to thirteen feet. Neither of said trucks had any lights on either the rear or front thereof. They had been parked in said position for about two hours at the time of the collision, waiting for assistance to come from Waco. During the two hours the trucks had been so parked, a large number of automobiles, including the Greyhound bus, had passed along the highway between said trucks, said cars being driven, according to witnesses, at all rates of speed from slow up to the limit of the law. It became sufficiently dark for Atwell to, and he did, turn on his car lights some ten or fifteen miles before he reached the place of the collision.

Based on sufficient pleadings to support same, the jury found that Mr. Atwell was driving the car at more than thirty-five miles per hour, and that he was attempting to pass the truck at a greater rate of speed than fifteen miles an hour, each of said acts at the time was in violation of the criminal statutes. The jury found that each of said acts was a proximate cause of the injury. The jury further found that Mr. Atwell was driving the car at a dangerous rate of speed, without sufficient headlights, and that he failed to keep a proper lookout, and that each of said acts was negligence and a proximate cause of the injury. The jury further found, in response to pleadings by appellant, that the injury was not the result of an unavoidable accident; that appellant had not loaned Mr. Atwell to the Cruger Company to assist it in making a sale of the car; that Atwell and Madden were not engaged in a joint enterprise; that Madden did not have an equal right with Atwell to control the driving and operation of the car at the time of the collision; that the failure of the Ford truck or the White truck to have lights burning was not the proximate cause of the collision; that the way in which the Ford truck and the White truck were parked on the highway was not negligence; that the way said trucks were parked did not obstruct the free passage of automobiles on said highway; that their being parked in the way they were, without lights, did not constitute a dangerous situation on the highway; that Madden was not negligent in failing to request Atwell to decrease his speed; that Madden did not acquiesce in, or approve of, the speed Atwell was driving; that Madden did not fail to keep a proper lookout; that Madden was not guilty of negligence in failing to remonstrate or caution Atwell with reference to the speed the car was being driven; that Madden was not negligent in failing to discover the trucks.

The jury assessed the damages for Mrs. Madden at $37,000, and for Eugene Madden, $3,000, for which the trial court entered judgment.

▆▆▆▆ Quoting from appellant's brief, it contends by its first ten propositions that the trial court should have given its requested peremptory instruction:

"(1st) Because the deceased, Madden, was guilty of contributory negligence, as a matter of law, in (a) failing to protest, remonstrate or caution Snyder Atwell; and (b) in failing to exercise any care for his own safety on the given occasion; and,

"(2d) Because he accepted or assumed or incurred whatever risk was incident to the known situation under the known circumstances on the occasion in question; and

"(3d) Because Atwell and Madden were unqualifiedly engaged in and upon a joint enterprise in which the negligence of Atwell would be imputed to and be the negligence of Madden."

We cannot agree with any of these contentions of appellant. Before the court would be authorized to hold that Madden, as a matter of law, was guilty of such contributory negligence as to prevent appellees from recovering, it must appear from the evidence that his acts were of such nature and character that same beyond question caused the injury. In 20 R. C. L. 24–26, it is stated: "There is, however, no fixed standard in the law by which a court is enabled to say arbitrarily in every case what conduct shall be considered reasonable and prudent. * * * The surrounding facts and circumstances are of controlling importance. * * * What would be extreme care under one condition of knowledge, and one state of circumstances, would be gross

negligence with different knowledge and in changed circumstances. * * * The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs."

In 45 C. J. 633, the rule is laid down that: " 'Negligence per se' is a term which is frequently employed to designate an act or omission which is contrary to positive law, or so opposed to the dictates of common prudence that it can be said, without hesitation or doubt, that no careful person would have been guilty thereof."

Clearly, to our minds the fact that Madden was riding in the car with Atwell under the facts and circumstances as revealed by the testimony in this case would not have authorized or justified the trial court, nor does it authorize or justify this court, in holding that Madden was guilty of such acts of contributory negligence that would, as a matter of law, prevent appellees from recovering. Under the testimony each of the two trucks was parked practically off the paved part of the road and had been in the same position for more than two hours and many cars had passed going at all rates of speed. There was a space between the two cars, if they had been parked parallel, of from ten to thirteen feet. According to some witnesses, they were approximately two hundred and twenty-five feet apart. It was an open highway with hard-surfaced pavement. According to Mr. Atwell's testimony, he was driving at from forty to fifty miles per hour, with lights on his car sufficient for him to see any and all obstructions on the highway. While under the law at said time driving a car forty or fifty miles per hour was a violation of the criminal statutes, a few months thereafter the Legislature amended the law fixing the speed limit at forty-five miles per hour. In many of the states the speed limit has been entirely eliminated. Mr. Atwell was an experienced driver of a Lincoln car. He testified that the accident occurred after dark; that after dark the speedometer could not have been easily seen by Madden unless the dash light was on; and that he (Atwell) did not remember whether the dash light was on or off. Under such circumstances it could not, we think, be said, as a matter of law, that Mr. Madden was guilty of negligence by not having remonstrated with Mr. Atwell at the speed he was driving, or without having called his attention to the presence of the parked cars along the highway. It is a matter of common knowledge that drivers of automobiles along the highway are constantly called upon to pass cars that have stopped for repairs. The evidence was sufficient to support the jury's findings that the trucks were not parked in such a way as to in any way obstruct the free passage of traffic on the highway and that Mr. Madden was not in any way guilty of contributory negligence either by commission or omission in riding with Mr. Atwell at the time and under all the conditions and circumstances existing. 5 Tex. Jur. 785 and 790; 42 C. J. 1169–1173; Blashfield's Encyclopedia of Automobile Law, vol. 2, 1109, 1110; D. & H. Truck Line v. Hopson (Tex. Civ. App.) 4 S.W.(2d) 1013; Yturria v. Everton (Tex. Civ. App.) 4 S.W.(2d) 211; City of Uvalde v. Stovall (Tex. Civ. App.) 279 S. W. 889; Routledge v. Rambler Automobile Co. (Tex. Civ. App.) 95 S. W. 749; Bower Auto Rent Co. v. Young (Tex. Civ. App.) 274 S. W. 295; Lancaster v. Browder (Tex. Com. App.) 256 S. W. 905.

Appellant relies mainly upon the case of Murphy v. Milheiser (Tex. Civ. App.) 30 S.W. (2d) 586 (error ref.), and authorities there cited. We think the facts in this case are easily distinguishable from the Murphy v. Milheiser Case. In the Murphy v. Milheiser Case the opinion of the court states that the car had been operated by Milheiser, the driver, continuously for more than twenty miles at from seventy to eighty miles an hour with the full knowledge and with the approval of Murphy and without any protest being made by Murphy, the invited guest, who was killed. The jury found that Murphy was guilty of negligence in failing to protest, but they also found that that negligence was not a proximate cause of the collision. The court held that where a person rode in a car which he knew was being driven at from seventy to eighty miles an hour for a distance of more than twenty miles without making any protest, he was, as a matter of law, guilty of such contributory negligence as to prevent him from recovering any damages. In the case at bar, the car was being operated, according to Mr. Atwell's testimony, at from forty to fifty miles per hour. It was not shown that the dash light was burning so Madden could see or know the speed the car was running and no direct evidence that Madden knew at the time of, or just before the collision, what rate of speed Atwell was driving.

The trial court defined "proximate cause" as:

"That cause which in a natural and continuing sequence, unbroken by any new and independent cause, produces an injury and without which the injury would not have occurred, and from which it ought reasonably to have been foreseen or reasonably anticipated by a reasonably prudent person that the injury complained of, or some similar injury, would result naturally and probably in the light of the attending circumstances.

" 'New and independent cause' as used herein, means a new and independent force which

168

breaks the causal connection between the original wrong, if any, and the injury."

Appellant's objection to said definitions was that in defining "proximate cause" the court had failed to define "new and independent cause." It further objected to the court's definition of "intervening agency" because it was not a part of the court's definition of "proximate cause," and because it was not necessary for the court to give a definition of "intervening agency."

■ By its eleventh and last proposition, appellant in this court for the first time calls attention to what it deems defects in the definition of "new intervening cause" as given by the trial court, in that it claims said definition did not embrace a lack of control and lack of foreseeability. A careful reading of the court's charge shows that it did not use in its definitions, nor in connection with any of the issues submitted, the words "intervening agency" or "new intervening cause." Presumably, the trial court omitted from its charge as given said definitions because of the objection made by appellant that it was not necessary to define "intervening agency." If appellant is by this proposition attempting to complain of the definition of "new and independent cause" as given by the trial court, its objections thereto as made in the trial court were too vague and indefinite to put the trial court upon notice of the particular defects now pointed out, and would not authorize or justify this court in reversing the judgment of the trial court for said alleged defects. Colvard v. Goodwin (Tex. Civ. App.) 24 S.W.(2d) 786, par. 19; Norwich Union Indemnity Co. v. Wilson (Tex. Civ. App.) 17 S.W.(2d) 68, par. 33; Karotkin Furniture Co. v. Decker (Tex. Civ. App.) 32 S.W.(2d) 703; Monzingo v. Jones (Tex. Civ. App.) 34 S.W.(2d) 662; Chisos Mining Co. v. Llanez (Tex. Civ. App.) 298 S. W. 642; Texas Electric Ry. Co. v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 9 S.W.(2d) 185, par. 10; City of Wichita Falls v. Whitney (Tex. Civ. App.) 26 S.W.(2d) 327; Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920.

We have examined all of appellant's propositions and assignments of error, and same are overruled.

The judgment of the trial court is affirmed.